HAYES PUMP & MACHINERY CO. *vs.* PITMAN & BROWN COMPANY & another.

Suffolk.   January 5, 1954. — March 19, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Contract*, Building contract, Performance and breach, Implied contract.

A subcontractor on a sewer construction project, upon being found to have performed the subcontract in good faith except for certain departures therefrom not appearing to have been intentional, was entitled to be paid by the general contractor the subcontract price less certain expense incurred by the general contractor and chargeable to the subcontractor by reason of such departures.   [241–243]

Where a subcontractor on a sewer construction project, obligated by the subcontract to furnish certain sleeves for installation by the general contractor before the concrete was poured, failed to furnish them until after the concrete was poured and thereby the general contractor incurred installation expense greater than the normal installation expense which would have been incurred had the sleeves been furnished seasonably, the general contractor was entitled to an allowance against the subcontractor of the excess of the total installation expense incurred over the normal expense.   [243]

BILL IN EQUITY, filed in the Superior Court on April 6, 1950.

The suit was heard by *Goldberg*, J., upon a master's report.

*Harry B. Zonis*, for the defendants Pitman & Brown Company and another.

*Irvin M. Davis*, for the plaintiff.

LUMMUS, J. This is a bill in equity, filed April 6, 1950, by a creditor of the defendant Pitman & Brown Company, hereinafter called Pitman, to obtain the benefit of security under G. L. (Ter. Ed.) c. 149, § 29, as it appears in St. 1938, c. 361, consisting of a bond given by Pitman, as principal, and the defendant Peerless Casualty Company, hereinafter called Peerless, as surety, to the city of Beverly, conditioned upon the performance of a written contract by which Pitman agreed to build a sewerage system for the city, and agreed to pay all subcontractors.

The case was referred to a master, who made findings as follows. Pitman sublet the furnishing and installing of the equipment for pumping stations to the plaintiff for $39,445.83. After crediting payments, Pitman owed the plaintiff $7,522.82. But the plaintiff owed Pitman $3,589.27, so that the net balance owed the plaintiff was $3,933.55, with interest from May 29, 1949. On May 6, 1949, the plaintiff finished its work, and within the time prescribed by the statute filed a statement of its claim with the city clerk of Beverly, and brought this suit.

By an interlocutory decree entered July 20, 1953, all exceptions to the master's report were overruled, and the report was confirmed. By the final decree, entered on the same day, the plaintiff was awarded $3,933.55, with interest from May 29, 1949, to be paid by the defendant Pitman, and if not paid by Pitman to be paid by the defendant Peerless. Both Pitman and Peerless appealed from both decrees. They argued the case and filed a joint brief.

The defendants contend that the plaintiff is not entitled to recover anything, because it intentionally departed from the contract, citing *Andre* v. *Maguire*, 305 Mass. 515.

It is true that some of the plaintiff's workmen were not fully competent. But the contract provided only against the employment of workmen to whom Pitman objected, and there was no objection. The plaintiff's failure to build a shed for storage was repaired by Pitman at the expense of the plaintiff. The plaintiff failed to haul, unload and store material to be installed, but the work was done by Pitman at the expense of the plaintiff. The plaintiff failed to install a water pipe in one pump house, but it was installed by Pitman at the expense of the plaintiff. The plaintiff failed to install conduit inlets in three pump houses, but that was repaired by Pitman at the expense of the plaintiff. The plaintiff's adjustments of its equipment caused Pitman expense in changing openings and in making pump and motor bases, but this expense was charged to the plaintiff by the master. The plaintiff failed to furnish sump hole covers, but Pitman furnished them at the expense of the plaintiff. The plaintiff failed to furnish seven sleeves seasonably, but additional expense thereby caused to Pitman in installing the sleeves was charged to the plaintiff by the master. The master found "that the plaintiff has furnished all the material and performed all its services and labor which it was obligated to do under its agreement with the defendant [Pitman] as said agreement was modified by both parties, except for those items which I later find the plaintiff failed to furnish and perform and which therefore the defendant [Pitman] was obliged to furnish and perform. . . . I found that this work and material was approved and accepted by the city of Beverly on March 7, 1949. The defendant [Pitman] also accepted the plaintiff's completion of the work. If material, I find that the fair value of the material and labor furnished in good faith by the plaintiff to the defendant [Pitman] is $39,445.83, exclusive of the material and labor referred to in paragraph 21 [amounting to $251.84], less deductions therefrom for those items [amounting to $3,589.27] which I later find the plaintiff owes to the defendant [Pitman]." Nowhere does the master find any intentional departure from the contract.

Such departures as there were, appear to have been either harmless or repaired at the expense of the plaintiff. We think that the plaintiff cannot be denied all recovery, but that under the rule of *Hayward* v. *Leonard*, 7 Pick. 181, and the many cases that follow it, was entitled to recover. And we see no error in the amount of recovery allowed.

The master found that the plaintiff was bound to furnish seven sleeves before the concrete was poured, that Pitman was bound to install the sleeves, that the plaintiff failed to furnish the sleeves until after the concrete was poured, that the total expense to Pitman of installing them after the concrete was poured was $2,016.98, that the normal installation expense which Pitman would have incurred had the sleeves been furnished seasonably by the plaintiff was $350, and that the $350 should be deducted and the plaintiff therefore charged with $1,666.98. This last sum was included in the total amount of $3,589.27 allowed to Pitman. The defendants contend that the plaintiff was not entitled to the credit of $350. We see no error in this credit.

The last contention of the defendants is that the plaintiff should bear the cost of maintaining the superintendent for the job for thirteen weeks ending in March, 1949, amounting to $1,945.84. The contract with the city provided that Pitman should maintain a superintendent "at all times when the work is under way." The master was unable to find that the work was "under way" during the period of thirteen weeks in question. Moreover, no finding indicates that the expense of the superintendent was to be borne by the plaintiff. We find no error in not charging the plaintiff with the cost of the superintendent.

No error appearing in the entire case, the interlocutory decree is affirmed, and the final decree is affirmed with costs of the appeal.

*So ordered.*