ALBRE MARBLE & TILE COMPANY, INC. *vs.* EDWARD GOVERMAN & others.

Suffolk. December 7, 1967. — January 22, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Contract,* Building contract, For public works, Performance and breach, Implied contract. *Public Works. Architect.*

The tile subcontractor on a public building construction project was not entitled to enforce the statutory security under G. L. c. 149, § 29, on the basis of the subcontract where it appeared that the subcontractor's work was faulty due to a defective condition of the surfaces tiled and that, although the general contractor directed the subcontractor to proceed and acquiesced in such faulty performance, the subcontract required the subcontractor to examine all the surfaces to be tiled, to report defective surfaces to the architect, and "not [to] proceed until all satisfactory provisions . . . [had] been made," and provided that the architect should determine the "quality, the acceptability and fitness" of all work. [549]

Where it appeared that, because the tile subcontractor on a building construction project disregarded provisions of the subcontract relating to the surfaces to be tiled, such work as he did was defective and the tiles had to be removed and reinstalled by others, he could not recover in quantum meruit for the work done by him. [550]

BILL IN EQUITY filed in the Superior Court on October 2, 1964.

The suit was heard by *Hale,* J., on a master's report.

*Lawrence H. Adler* for the plaintiff.

*Lewis L. Whitman (Samuel H. Cohen* with him) for United States Fidelity and Guaranty Company; *Walter J. Gotovich,* Town Counsel, for the Town of Norwood, also with him.

REARDON, J.    The plaintiff brought its suit under G. L. c. 149, § 29, to collect the balance which it claims is due to it arising from a subcontract on the building of a school in Norwood.    Recovery was sought for labor and materials under the provisions of the subcontract and by amendment in quantum meruit also.    The suit was brought against Edward Goverman, the general contractor; the United States Fidelity and Guaranty Company, the bonding company; and the town of Norwood.    Here, only the liability of the bonding company is in issue.    A master found that the plaintiff was entitled to certain damages and that the defendant Goverman was not entitled to any recovery on a counterclaim by him.    An interlocutory decree confirmed the master's report after modifying it by striking the master's findings in favor of the plaintiff.    A final decree was entered dismissing the bill and the counterclaim.    The plaintiff appealed from the interlocutory and final decrees.

1. There is no report of the evidence heard by the master. Facts found by him are thus conclusive unless they are on their face mutually inconsistent or plainly wrong.    *Lawrence* v. *Selectmen of Egremont,* 350 Mass. 354, 357, and cases cited.    Rule 90 of the Superior Court (1954).    While the unduly lengthy and discursive master's report before us tends to confuse as much as to clarify, we are able to distill sufficient from its content to sort out the facts and apply the law to them to decide the case.

2. Goverman undertook by contract the construction of a school for the town of Norwood.    The plaintiff upon its bid became the subcontractor under Goverman for certain tile installations.    In the subcontract it bound itself to Goverman by the terms of plans, specifications and general conditions of the prime contract.    Under § 10 of the specifications the plaintiff, prior to proceeding to install the tile, was under the following contract obligations:  "(a) Examine surfaces to receive tile.    (1) All surfaces to be dry, clean,

free of oily or waxy films, or non-compatible matter, and be firm, level, and plumb. (2) Wall surfaces which vary more than $\frac{1}{8}''$ in 8 ft. from the required plane are not acceptable. Corners must be square, straight and plumb. (b) Report to the Architect in writing all such defects. Do not proceed until all satisfactory provisions have been made. (e) Starting of work will imply acceptance of surfaces to receive tile within the limits established in this specification section." In addition to certain other prime contract provisions relating to the authority of the architect to make minor changes, his function as arbitrator was defined in the contract as follows: "Article 2. The Architect shall in all cases determine the amount, quality, the acceptability and fitness of the several kinds of work and materials which are to be paid for hereunder and shall decide all questions which may arise as to the fulfillment of this contract on the part of the Contractor and their determination and decision, in case any question may arise, and shall be a condition precedent to the right of the Contractor to receive any payment hereunder. The plans, specifications, proposal, and any addenda shall form a part of this contract." The tile work of the plaintiff did not meet the specifications, largely due to the defective surfaces over which the tile was laid. While this faulty performance was apparently concurred in by Goverman, the architect took no part either in approving or disapproving the work performed, which represented a departure from the specifications. On these facts the judge ruled, when the motion to confirm the report was before him, as follows: "I rule that under the provisions of Section 10 (e) of the 'specifications' contained in the contract between the parties that . . . [the plaintiff] accepted the surfaces upon which it was to install tile and may not now rely on the irregularities now in these surfaces to explain its failure to perform its contract in a good and workmanlike manner. By proceeding to perform its work on irregular surfaces despite the mandate of paragraph 10 (b) of the 'specifications' in the contract between the parties, the . . . [plain-

tiff] acted at its peril. The directions of the agents of the
. . . [defendant] Goverman, who was the general con-
tractor and not the architect, to proceed with the work . . .
did not relieve . . . [the plaintiff] of its contractual obliga-
tions to install tiles in a good and workmanlike manner."
There was no error. The action of the judge was predicated
on the theory that the prime contractor and the subcon-
tractor could not modify the contract's specifications. This
was a question of law upon which he was empowered to
rule (*Foot* v. *Bauman*, 333 Mass. 214, 219; *Fred C. McClean
Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg.
Comm. of Westfield*, 345 Mass. 267, 271; *Rose* v. *Homsey*,
347 Mass. 259, 260), and the importance of holding those
who engage in public contracts to act in strict accord with
their undertakings is well recognized. See G. L. c. 30, § 39I.
As has been argued by the defendant bonding company,
§ 10 of the specifications set forth clearly the duty upon
the plaintiff to inspect all surfaces which were to receive
tile, to report to the architect in writing on surface defects,
and not to proceed "until all satisfactory provisions" were
made. The plaintiff chose to press forward with what it
knew to be defective performance, reassured by the con-
currence of the defendant prime contractor in its actions.
This was contrary to contract provisions establishing the
architect's role in any deviations from contract require-
ments. *Norcross* v. *Wyman*, 187 Mass. 25. *Hebert* v.
*Dewey*, 191 Mass. 403, 408. *G. L. Rugo & Sons, Inc.* v.
*Lexington*, 338 Mass. 746, 749–751. *Fred C. McClean
Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass.
356, 363. The plaintiff cannot recover from the defendant
bonding company its expenses for faulty performance in
wilful violation of the contract. *Otis Elevator Co.* v. *Long*,
238 Mass. 257, 264–265. See *Hayes Pump & Mach. Co.* v.
*Pitman & Brown Co.* 331 Mass. 240.

3. By amendment to its bill the plaintiff also sought
relief in quantum meruit. The law in this Commonwealth
in relation to building contracts is that a contractor may
recover in quantum meruit "if he can prove both sub-

stantial performance of the contract and an endeavor on his part in good faith to perform fully, and the burden is upon him to prove both. . . . In the absence of special exculpating circumstances an intentional departure from the precise requirements of the contract is not consistent with good faith in the endeavor fully to perform it, and unless such departure is so trifling as to fall within the rule *de minimis*, it bars all recovery." *Andre* v. *Maguire*, 305 Mass. 515, 516. See *Lantz* v. *Chandler*, 340 Mass. 348, 349; *Salem Glass Co.* v. *Joseph Rugo, Inc.* 343 Mass. 103; *Kauranen* v. *Mattaliano*, 347 Mass. 583, 584, 586.

The plaintiff's intentional failure to comply with the specific contractual provisions of § 10 of the specifications discussed above is not de minimis and bars recovery. *Andre* v. *Maguire, supra.* In addition, it is evident from the master's findings, notwithstanding portions of the language which he employed, that such work as the plaintiff did was not a substantial performance of the subcontract viewed as a whole. *Smedley* v. *Walden*, 246 Mass. 393. In fact, it was a deviation from the specifications sufficient to necessitate the removal of the work done by the plaintiff and reinstallation of tile by others. These circumstances preclude the possibility of recovery by the plaintiff in quantum meruit. *Bowen* v. *Kimball*, 203 Mass. 364, 370–371. *Smedley* v. *Walden, supra,* at pp. 395, 400. See *Hayward* v. *Leonard*, 7 Pick. 181, 187.

*Decrees affirmed.*