**SIDERIUS, INC. & another,[1] plaintiffs**
**vs.**
**Paul SRIBERG & others,[2] defendants**

No. 37932

Superior Court/Suffolk County
Commonwealth of Massachusetts

March 24, 1982

---

1. Federal Steel Corporation.
2. Robert M. Sriberg, as he is Trustee of Roll Form Products, Inc. Pension Plan and Trust; Robert M. Sriberg, as he is Trustee of Mid Cape Equity Trust; the First National Bank of Boston, as it is Trustee of Roll Form Products, Inc. Pension Plan and Trust; Howard I. Rosen, as he is Trustee of Pine Hill Realty Trust; William E. Cobb, as he is Trustee of Mid Cape Equity Trust; Jersey Steel & Strip, Inc.; and Emprise Trucking Co., Inc.

Joshua M. Alper, counsel for plaintiff.
Gerald P. Tishler, counsel for defendant.

## FINDINGS OF FACT, MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, ORDER DISMISSING COUNTERCLAIM AND ORDER DENYING DEFENDANTS' MOTION TO AMEND ANSWER BY ADDING SIXTH AFFIRMATIVE DEFENSE

### Background

This action has been brought by plaintiffs, Siderius, Inc. (Siderius) and its wholly owned subsidiary, Federal Steel Corp. (Federal), both New York - incorporated steel vendors, against defendant Paul Sriberg, the former majority stockholder, director, and president of plaintiffs' customer, Roll Form Products, Inc. (Roll Form), a Delaware corporation with principal place of business in Boston, Massachusetts. The suit is also brought against Robert Sriberg, former minority stockholder and attorney for Roll Form, currently a Trustee of Roll Form as a result of a bankruptcy reorganization, and the other named defendants as stakeholders. The defendants were joined in an effort to reach and apply assets believed to be of Paul Sriberg. The cause of action is based on two unconditional guarantees, one to each plaintiff, signed by Paul Sriberg on August 3, 1978, whereby he personally guaranteed the payment of all indebtedness to plaintiffs owed by the Principal, Roll Form. This lawsuit has been brought for approximately eight million dollars owed to Siderius and approximately four hundred thousand dollars owed to Federal.

The complaint is in eight counts, the first two relying on the guarantee in favor of Siderius and Federal, respectively, the remainder against the targets of the reach and apply.

Defendant, Paul Sriberg, in his answer admitted his past corporate relationships with Roll Form, that Siderius sold Roll Form steel products during the period indicated, and that he executed the guarantees on August 3, 1978. Four separate affirmative defenses were also included in the answer and are summarized as follows: (1) that plaintiffs, not registered to do business in Massachusetts under G.L.c. 181, § 4, cannot bring suit in Massachusetts, according to G.L.c. 181, § 9, (2) that there is lack or failure of consideration, (3) that the statute of frauds bars the claim and (4) that the plaintiffs are "estopped" by breach of contract, in supplying defective steel and making late deliveries, that allegedly contributed to the ultimate bankruptcy of Roll Form. Defendant also set out a counterclaim seeking a set-off that asserts the same allegations as those under the "estoppel" defense.

The case came before the court for trial on January 28, 1982. At that date, and extending to the 29th of January, a hearing was held on (1) plaintiff's motion to strike the first, second, third[3] and fourth affirmative defenses; (2) plaintiff's motion to dismiss the counterclaim, and (3) defendant's motion to amend the answer by adding a fifth affirmative defense of "release and waiver."[4] The court advised counsel that it would treat the motions as "motions for summary judgment" under Mass. R. Civ. P. 56 and granted counsel further time until Monday, February 1, 1982 for affidavits and briefs.

At that later date, one day before the case was scheduled to go to trial, defendants filed another motion to further amend the answer by adding paragraph 13[5] to further detail allegations of failure of consideration, paragraph 15[6] to allege notice, both orally and in writing, to plaintiff of the alleged breaches of contract, and paragraph 15-e to assert a sixth affirmative defense of fraud, alleging non-disclosure of plaintiff's intent to

---

3. Defendants waived the third defense (statute of frauds).

4. The court allowed the amendment to add the fifth affirmative defense without prejudice to considering a motion for summary judgment.

5. The court allowed the amendment to add paragraph 13 without prejudice to considering the motion for summary judgment.

6. The court allowed the amendment to add paragraph 15, to allege notice, without prejudice to considering the motion for summary judgment.

cancel future orders in order to induce Sriberg to sign the guarantee. Another hearing was held on Wednesday, February 3, 1982, when plaintiffs made their motion for summary judgment. After careful consideration of the parties' pleadings, arguments in the aforementioned hearings, memoranda and supporting affidavits and exhibits,[7] the following orders are to issue as to the above motions:

1) Defendant's motion to amend its answer by asserting a sixth affirmative defense of fraud is **DENIED**.

2) Plaintiffs' motion for summary judgment is **ALLOWED**, on the concession by defendant that actual damages by way of set-off would not exceed one million dollars and concession by plaintiffs to a one million dollar reduction of their total claim.

3) Plaintiffs' motion to dismiss counterclaim is **ALLOWED**.

### Findings of Facts

The following facts are not in genuine dispute:

1. Roll Form began doing business in 1966. (Affidavit of Paul Sriberg 2/1/82). During the period of July 20, 1976 until January 31, 1979, Siderius sold steel to Roll Form. (Complaint par. 11, complaint exhibit B; Paul Sriberg's answer). Paul Sriberg was president, director and majority stockholder of Roll Form during this period, and up to July, 1979. (Paul Sriberg's answer).

2. In 1977, Paul Sriberg informed the president of Siderius and Federal, Bruno Balfo, that all of his, Sriberg's money was tied up in Roll Form. (Affidavit of Paul Sriberg 2/1/82, par. 2).

3. There were late and defective steel deliveries during 1977 and 1978 from Siderius to Roll Form, and Roll Form gave notice of its dissatisfaction. (Affidavit of Paul Sriberg 2/1/82, par. 9 and attachments thereto).

---

7. Among the materials submitted in connection with the defendants various motions were affidavits from: 1) Paul Sriberg - one affidavit executed January 20, 1982 and another February 1, 1982, with attachments; 2) Robert Sriberg, dated February 1, 1982.

Defendant also submitted the following exhibits in opposition to plaintiffs' motion for summary judgment: 1) Letter from Siderius' Credit Manager, Walter Nilsen, to Paul Sriberg, dated 4/27/78, with a proposed draft of the guarantee; 2) Second letter from Nilsen to Roberg Sriberg approving the redraft of the agreement and returning it for execution; 3) Siderius' ledger summarizing transactions, dated 7/31/78; 3a) Statements of Siderius, dated 8/31/78; 4) Siderius change order, dated 8/7/78; 4a) Letter from Robert Sriberg to Siderius, dated 8/11/78; 5) Another Siderius change order, dated 8/7/78; 5a) Another letter from Robert Sriberg to Siderius, dated 8/11/78; 6) A Siderius interoffice memorandum, from Nilsen to Serge Vinograd, dated 11/16/78; 7) A Siderius interoffice memorandum "to file" from John Rapuano, dated 4/6/79; 8) A Siderius interoffice memorandum from Nilsen to Vinograd dated 4/26/79. 9) Notes allegedly by Nathan Milikowsky, dated 10/14/?. (Limited to an offer of proof only); 10) New York bankruptcy "Order Designating Official Creditors' Committee," filed September 12, 1979; 11) Bankruptcy "Application for Order Authorizing Retention of Attorneys by Creditors' Committee; 11a) Bankruptcy affidavit of proposed attorney, executed September 11, 1979; 12) Bankruptcy "Order Authorizing Retention of Attorneys by Creditors' Committee," dated September 12, 1979; 13) Bankruptcy "Application," dated February 6, 1981; 14) Bankruptcy "Stipulation," dated February 6, 1981; 15) Bankruptcy "Form of Acceptance and Election," dated _____, 1980, signed by Siderius, Inc.; 16) Bankruptcy "Form of Acceptance and Election," dated _____, 1980, signed by Federal; 17) Bankruptcy "Notice of Order of Confirmation of Plan, Discharge and Last Day to File Claims," dated June 15, 1981.

Plaintiffs' motion for summary judgment, filed February 3, 1982, attached the affidavit of one William Goss with "attachments A-F" and a certified copy of "Order Allowing Proofs of Claim" in the Bankruptcy of Roll Form dated February 10, 1981 (marked "A for identif.") and "Proofs of Claims" made by Paul Sriberg (marked "B for identif."). The attachments to Goss' affidavit are described as follows: (A) Siderius' accounts receivable ledger for the year ending December 31, 1978; (B) Siderius' accounts receivable ledger for the year ending December 31, 1979; (C) Thirteen invoices in open amounts as reflected on Exhibits A & B; the total of the invoice balances outstanding is $7,180,221.70; (D) Thirty-eight debit memos from Siderius to Roll Form as reflected on Exhibits A & B; the total sum of these debit memos is $1,625,882.45; (E) Summary of records of Federal Steel showing balances owed by Roll Form; the outstanding balance is $819,454.74; (F) Checks received in the Roll Form Bankruptcy by Siderius for $145,063.19 and Federal for $14,004.35. Also included in plaintiffs' earlier supporting papers is an affidavit of John Rapuano, Vice President of Federal, on the issue of interstate business and the requirements of G.L.c. 181.

4. In the Spring of 1978, when Roll Form owed Siderius substantial money, Paul Sriberg offered Balfo his personal guarantee. (Affidavit of Paul Sriberg 2/1/82, par. 3). This offer was made after Balfo told Sriberg that Siderius was "breathing down his neck" over the size of Roll Form's debt. Balfo later responded that his superiors favored the guarantee and that it would be a great help to him. (Affidavit of Paul Sriberg 2/1/82, par. 3) (After the guarantees were executed no action was taken against Roll Form, which entered bankruptcy about a year after the guarantee.).

5. On April 27, 1978, a draft of the guarantees, to be signed by Paul Sriberg, was prepared. (Defendant's Exhibit 1). On May 18, 1978, a re-draft in the form of the final guarantees was prepared by defendant Robert Sriberg, with the additional language prohibiting a "release" of claims against the principal. (Defendant's Exhibit 2). This language was added without question or comment from plaintiffs. (Affidavit of Robert Sriberg 2/1/82, par. 4).

6. By July 31, 1978, Roll Form's debt was approximately twelve million dollars owed to Siderius. (Defendant's Exhibit 3).

7. On August 3, 1978, Paul Sriberg executed his personal guarantees for Roll Form's obligations to Siderius and Federal, with a $500,000 deductible each. (Complaint pars. 12, 13; complaint exhibits C & D; Paul Sriberg's answer) (copy of guarantee is annexed hereto).

8. On August 7, 1978, Siderius cancelled some of Roll Form's standing orders and Roll Form responded on August 11, 1978 with letters requesting that the orders not be cancelled.

9. Siderius made a number of new shipments in 1978 and the amount owed by Roll Form to Siderius as of December 31, 1978 was approximately 8.3 million dollars. (Affidavit of Goss, attachment "A"). Siderius applied payments to the old unpaid debts first. (Affidavit of Goss, par. 5). The invoices of September 1, 1978, December 15, 1978 and January 22, 1979 state payment terms as "net ninety days." (Affidavit of Goss, attachment "C").

10. As of December 31, 1979, the amount owed by Roll Form to Siderius rose to approximately 8.8 million dollars. (Affidavit of Goss, attachment "B"). The increase from 1978 reflects the balance owed for storage and interest charges as evidenced in unpaid debit memos. (Affidavit of Goss, attachment "D").

11. At the time the guarantees were executed, Paul Sriberg was told by Bruno Balfo that Roll Form's indebtedness would not be permitted to increase beyond the amount of August 3, 1978 (and in fact it did not). He was also told that Roll Form would be required to pay more than the invoice amount for each future shipment (which in fact was done). (Affidavit of Paul Sriberg 2/1/82, par. 8; Affidavit of Goss, attachments "A-D").

12. By January, 1979, it was clear that Roll Form was suffering impaired financial condition; and Paul Sriberg began negotiating with Siderius, Federal and the only other major supplier, Jordan International, a company managed by Nathan Milikowsky, the current president of Roll Form. (Affidavit of Paul Sriberg, 2/1/82, par. 11).

13. On April 26, 1979, Serge Vinograd, at the time the Executive Vice President of Siderius, was of the view that steel was to be released to Roll Form on the basis of 130 cents for the dollar, and strongly recommended that $100 be considered payment of the "new" invoice and only $30 as payment against "old" receivables. (Defendant's Exhibit 8).

14. In July, 1979, Paul Sriberg lost his stock and control of Roll Form to Nathan Milikowsky. Sriberg retained his director position. (Affidavit of Paul Sriberg, 2/1/82, par. 12, 13).

15. On August 1, 1979, Roll Form filed a Chapter XI Petition in Bankruptcy in the United States District Court for the Southern District of New York. (This suit on the guarantees was filed on October 16, 1979, after notice to Sriberg was given in July of 1979.).

16. On September 11 and 12, 1979, Vinograd became Chairman of the Creditors Committee in the Bankruptcy and Siderius' attorney was the attorney for the Committee. (Defendant's Exhibits 10, 11, 11a).

17. On August 22, 1980, Siderius amended its proof of claim in the bankruptcy to change the original claim of $8,171,327.60 to $8,806,104.15. On September 14, 1979, Federal had filed a proof of claim in the amount of $819,494.71. On February 6, 1981, an application was submitted to the Bankruptcy Court, together with a stipulation between Roll Form, Siderius and Federal, to reduce Siderius' proof of claim to $8,488,668.22 and allowing Federal's claim in the amount filed of $819,494.71. The stipulation reserved Siderius' rights against guarantors. (Exhibit "A for Identif.").

18. On February 10, 1981, the Bankruptcy Court entered an order allowing these proofs of claims. (Exhibit "A for Identif.").

19. On May 27, 1981, Paul Sriberg filed his own proof of claim in the Roll Form Bankruptcy for $56,473.48 for services rendered in the period from July 9, 1979 to July 9, 1980 for a priority expense of administration. (Paul Sriberg filed a $100,000.00 claim on May 26, 1981 for compensation due for that one year period). (Exhibit "B for Identif.").

20. On June 5, 1981, a bankruptcy plan was confirmed and on July 15, 1981, Roll Form was discharged. (Defendant's Exhibit 17).

21. The proceeds from the bankruptcy to Siderius were $145,063.19 and to Federal $14,004.35. (Affidavit of Goss, par. 10, attachment "F").

22. Federal Steel was engaged solely in interstate business in the Commonwealth of Massachusetts. (Affidavit of John Rapuano.).

## Discussion

Plaintiff moved for summary judgment pursuant to Mass. R. Civ. P. 56. Summary judgment can be granted if and only if there is "no genuine issue as to any material fact." Mass. R. Civ. P. 56 (Reporter's Notes). If any such issue appears, summary judgment must be denied. Id.

The court can consider only the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in determining whether there exists a genuine issue of material fact. Mass. R. Civ. P. 56(c). Supporting and opposing affidavits must be on personal knowledge, setting forth only such facts as would be admissible in evidence. Mass. R. Civ. P. 56(e). Faced with a summary judgment motion supported by affidavits or the like, an opponent may not rest upon the mere allegations or denials of his pleadings. He bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine material factual issue. Mass. R. Civ. P. 56(e); **Community National Bank v. Dawes**, 369 Mass. 550, 554 (1976).

While the plaintiffs had originally moved to strike Paul Sriberg's affirmative defenses under Mass. R. Civ. P. 12(f), the court indicated that it would treat the motions as those for summary judgment, as matters outside the pleadings were presented by the parties and not excluded by the court. See Mass. R. Civ. P. 12(b), 12(f) (Reporter's Notes).

### I. Defendant's First Affirmative Defense - Requirements of G.L.c. 181, § 4 and § 9.

Sriberg asserts in his first affirmative defense that since plaintiff Federal Steel is not registered to do business in Massachusetts pursuant to G.L.c. 181, § 4, then it lacks the capacity to bring suit in Massachusetts according to the provisions of G.L.c. 181, § 9. This defense is quickly disposed of.

G.L.c. 181, § 9 provides that "no action shall be maintained or recovery had in any of the courts of the Commonwealth" by a foreign corporation doing business in the Commonwealth which has not complied with the registration requirements of § 4. Federal has not registered under § 4; however, it was engaged solely in interstate business and

is therefore excused from the above qualification provisions. It is clear that a corporation engaged solely in interstate business cannot properly be barred from access to any state court. **Goodwin Brothers Leasing, Inc. v. Nousis,** 373 Mass. 169 (1977).

The affidavit of John Rapuano, Vice President of Federal, supports the interstate character of Federal in this regard: "The only contact Federal Steel has had with the Commonwealth of Massachusetts is that at various times it has shipped steel in interstate commerce to customers in the Commonwealth of Massachusetts."

That Federal had on numerous occasions solicited business in Boston from Roll Form, according to Paul Sriberg in his affidavit of January 20, 1982, is not legally significant. Mere solicitation is an insufficient basis for requiring a foreign corporation to qualify to do business in Massachusetts. See **Goodwin Brothers, supra** at 174.

## II. Defendant's Second Affirmative Defense - Absence of Consideration for Guarantees.

The guarantees signed by Paul Sriberg, expressly state in the first paragraph, "In consideration of your extension of credit, on such terms, at such times and in such amounts as you shall deem proper, to Roll Form Products, Inc., Boston, Massachusetts, PRINCIPAL, the undersigned, as GUARANTOR, does hereby unconditionally guarantee...all...indebtedness which PRINCIPAL does now or may hereafter owe to you." Defendant argues that, in fact, contrary to the terms of this agreement, no credit was indeed extended to Roll Form and thus the contract must fail for lack of consideration.[8]

Parties agree on the figures representing sales to Roll Form and payments to Siderius and Federal for the period from August of 1978 until January 31, 1979. They also agree on the conditions existing prior to the execution of the guarantees regarding the large debts owed by Roll Form and the "uneasiness" of Siderius' officers over this accumulation. Therefore, resolution of this considera-

tion issue falls squarely into the sphere of the court as a matter of law; that is, summary judgment on this issue is appropriate as there is "no genuine issue of material fact." **Community National Bank v. Dawes,** 369 Mass. 550, 554 (1976).

Whether or not the court finds that plaintiffs "extended credit" as purported on the face of the guarantees, legal consideration may still be determined to be present, allowing the guarantees to retain force. "Where sufficient consideration for a contract of guaranty is shown by the evidence and is revealed to have been the actual consideration, it is sufficient to uphold the guaranty, even though a different consideration appears in the writing." 38 C.J.S. Guaranty § 26 and cases cited therein.

The court finds at the outset that there is sufficient undisputed evidence to find as a matter of law that "forbearance from suit" was actual consideration to sustain the guarantees. The Supreme Judicial Court has stated the rule that, "an agreement to forbear to sue may be implied when the circumstances are such as to lead to the reasonable conclusion that the new security...was given to induce the creditor to forbear, and that he did in fact forbear to enforce his claim by pro-

---

8. The court notes that under **Restatement of Contracts 2d** § 88, "[A] promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if

(a) the promise is in writing and signed by the promisor and **recites a purported consideration;**" (emphasis added).

Comment to § 88 explains that like § 87 on option contracts, § 88 precludes inquiry into the question whether the consideration recited in a written contract of guaranty was mere formality or pretense, or whether it was in fact given. The rationale for these sections is that guaranty and option contracts are ancillary to bargains and are thus to be accorded special treatment.

While I have found no Massachusetts authority on the application of Restatement § 88, I find the position of the Restatement persuasive here.

ceedings at law." **Merrimac Chemical v. Moore,** 279 Mass. 147, 155 (1932). See also, **Merchants Discount Co. v. Federal Street Corp.,** 300 Mass. 167, 169 (1938); **Sheraton Service Corp. v. Kanavos,** 4 Mass. App. Ct. 851 (1976). See generally, 78 A.L.R.2d 1410.

As in the **Merrimac** case, **supra,** the inference is inescapable that plaintiff did forbear from suit or collection of debt from Roll Form in exchange for the guarantees.

Paul Sriberg states in his affidavit of February 1, 1982, that Bruno Balfo, president of Siderius, "confided" to him that Siderius "was breathing down his neck" because Roll Form "owed it so much money." By the Spring of 1978, Balfo informed Sriberg that he, Balfo, was afraid he might lose his job at Siderius. As a response to this, Sriberg asked if it would help if he, Sriberg, were to give his personal guaranty. Subsequently, Balfo told Sribert that his "superiors acted very favorably to the suggestion and that it would be a great help to him personally." At the time the guarantee was actually signed, Roll Form owed Siderius approximately twelve million dollars.

After the execution of the guarantees, business was continued between Roll Form and Siderius and Federal, and new deliveries were made in the latter part of 1978 and early 1979. No suit or collection was attempted against Roll Form until a year later when the corporation filed for bankruptcy.

The above circumstances clearly establish awareness by Paul Sriberg of its creditors' anxiety, which prompted the execution of the contract, and the implied agreement by Siderius and Federal that the guarantees would "buy time", for which business could continue and suit would not be brought. "It is settled that a party suffers legal detriment sufficient to constitute consideration when he does something which he was privileged not to do or gives up something which he was priveleged to retain." **Sheraton Service Corp. v. Kanavos,** 4 Mass. App. Ct. at 852 (3d ed. 1957). Such was the situation under the instant facts whereby Siderius and Federal continued business with Roll Form and refrained from suit.[9]

Furthermore, while the parties have spent a great deal of time and effort in disagreement over whether or not actual credit was extended, the court is satisfied that credit — sufficient to constitute legal consideration — had indeed been extended. It is, of course, true that "the furnishing of credit to the company by the plaintiff on the strength of the defendant's promise is sufficient consideration to support the guaranty." **Rome v. Gaunt,** 246 Mass. 82, 94 (1923); **Atlas Shoe Co. v. Bloom,** 209 Mass. 563, 568 (1911).

The court accepts the broader definition of "credit" as argued by plaintiffs. Credit is "time allowed to the buyer of goods by the seller, in which to make payment for them." **Black's Law Dictionary** at 440. Under this definition, "extension of credit" may include postponement of collection activities as well as new sales of goods "on time." Indeed, the court finds that Siderius, in continuing new sales to Roll Form in the later part of 1978 and early in 1979 extended this more customarily referred to type of credit as well. (See Affidavit of Goss, attachments "A"; "B", and "C".). While sales during the period following the execution of the guaranty appeared to be on a "cash plus" basis, that is 130% payment (Affidavit of Paul Sriberg 2/1/82, par. 8), Siderius' practice with regard to application of payments, followed in the case of Roll Form, was to apply payments to the oldest outstanding invoices unless otherwise directed by the customer (Affidavit of Goss, par. 5). Thus, defendant was making payment on his old bills (and reducing his total balance) and receiving new merchandise without making full payment on the new bills. This is in ac-

---

9. There is no question that benefit to the corporate entity of Roll Form is consideration for the liability of individual defendant, Paul Sriberg. The fact that he was the primary shareholder at the time he executed the guarantees is sufficient to find as a matter of law that the company's benefit was his benefit.

cord with the presumptions of law regarding accounting procedures. See, **Amsco v. Foze,** Mass. App. Ct. Adv. Sh. (1979) 2431, 2433. See also, **Coz Chemical Corp. v. Riley,** Mass. App. Ct. Adv. Sh. (1980) 753, 757; **Carlson v. Lawrence H. Oppenheim Co.,** 334 Mass. 462, 464 (1956). Defendant points to a Siderius interoffice memorandum written by Serge Vinograd to Walter Nilsen recommending that $100 of every $130 payment be considered as payment of the "new" invoice and only $30 as payment on the "old" receivables. This memorandum, however, was dated 4/26/79, over eight months after the execution of the guarantees. (Defendant's Exhibit #8). If anything, this evidences a contemplated change in the policy in effect as explained in the Goss affidavit, not a continuous policy of payment first to the new accounts. Further support for Siderius' position that credit, as to the new shipments, was extended are three invoices dated September 1, 1978, December 15, 1978 and January 22, 1979. (Affidavit of Goss, attachment "C"). Those three invoices, in sum totalling over one million dollars, state on their face the payment terms of "net 90 days."

Final mention, on the issue of credit, should be made of the increase in interest and storage charges from the end of 1978 until the Spring of 1979. The total balance owed to Siderius from Roll Form at the close of 1978, as reflected on the Siderius' accounts receivable ledger of 12/31/78, was $8,336,968.14. (Affidavit of Goss, par. 4, attachment "A"). At the close of 1979, as reflected on the Siderius' accounts receivable ledger of 12/31/79, the total balance owed to Siderius rose to $8,806,104.15. (Affidavit of Goss, par. 5, attachment "B"). This difference represents the amount due for storage and interest charges during this time period and is documented by the debit memos which are included in the plaintiffs' supporting materials. (Affidavit of Goss, attachment "D" - see debit memos 3815 and 3843, remaining unpaid). In the strict sense of the word "credit", these debit memos represent services provided to Roll Form prior to charges being billed. The court finds as a matter of law for the purposes of plaintiffs' motions for summary judgment that there was, in fact, consideration for the guarantees and furthermore, credit was extended under the express terms of the bargained-for guarantees.

Defendant has sought to introduce evidence of an agreement between the parties at the execution of the guarantees that the actual consideration for the guarantees was a promise by Siderius to deliver steel free from defects and without delays. Defendant claims that absent this condition he would not have signed. (Affidavit of Paul Sriberg, 2/1/82, par. 7). Plaintiffs are quite right in pointing out that such evidence would conflict with the parol evidence rule. See, **Trustees of Tufts College v. Parlane Sportswear Co., Inc.,** 4 Mass. App. Ct. 783, 784 (1976). Considerations in addition to and not inconsistent with those set forth in a written instrument may be shown by parol evidence. **Snow v. Alley,** 156 Mass. 193, 195 (1892). Evidence of credit — which may include forbearance to sue — is thus admissible as consistent with the guarantees' terms. However, evidence of a condition of timely and nondefective deliveries is plainly inconsistent with the terms of the written contract, which promises an "unconditional guarantee" and allows creditor to "change the time of deliveries...or otherwise modify the terms of sales" to the principal. To allow introduction of such a condition flies in the face of the parol evidence rule — if such a condition was indeed bargained for, it should have been so included in writing. See, **Gifford v. Gifford,** 354 Mass. 247, 249 (1968).

### III. Fourth Affirmative Defense - Estoppel or Set-Off

Defendant, Paul Sriberg, in his answer asserts as a fourth affirmative defense that plaintiffs are estopped from proceeding against defendant because their breaches of contract, referring to late deliveries and defective steel, made it "impossible for Roll Form to pay its debts on a timely basis." (See related discussion on counterclaim **infra**).

Defendant Sriberg claims that general estoppel principles, "that the author of misfortune shall not himself escape the consequences and cast the burden upon another," **Merchants Bank v. State Bank,** 77 U.S. 604, 645 (1870), protects him in this action. The court is unwilling to apply so broad a proposition to the instant facts, but recognizes that some offset of damages may be possible.

The general estoppel claim is closely related to a fraud defense and therefore requires specificity of pleading. (See Fraud discussion **infra**). Defendant's theory fails in not alleging sufficient facts to support the specific elements of estoppel and in not alleging any evidence of deliberateness on plaintiffs' part in contributing to the demise of Roll Form. See, **Cellucci v. Sun Oil Co.,** 2 Mass. App. Ct. 722, 728 (1974), **aff'd,** 368 Mass. 811 (1975), and cases cited therein. On the contrary, defendant admits that he had informed Siderius, and Siderius was very much aware, that Sriberg's fortunes were inextricably entangled in the financial health of the Roll Form company. Nothing has been offered which creates a genuine issue of fact that plaintiffs might have "schemed" towards Roll Form's insolvency so that they could collect from the defendant. A general averment of "bad faith" in an obligation contract is insufficient to withstand a motion for summary judgment. See, **Community National Bank v. Dawes, supra.**

The defendant, then, would rely on the assertion that if Roll Form had claims for damages for the alleged late and defective deliveries, then he, as guarantor, could assert these claims. Defendant relies primariliy on Restatement of Security § 133 and cites the Second Circuit case of **In re Yale Express System, Inc.,** 362 F.2d 111 (2nd Cir. 1966) to support this affirmative defense. Section 133 is limited to the availability of a surety's "set-off" and states in pertinent part, "The surety cannot set off against the creditor the principal's claims against the creditor unless (a) the principal has assigned his claim to or consented to its use by the surety; or (b) the principal is made a party to the action instituted by the creditor, or (c) **the principal is insolvent.**" (emphasis added). Defendant claims that since the Principal, Roll Form, is insolvent, he is entitled to set-off Roll Form's claims against plaintiffs. See also 38 C.J.S. Set-off § 89.

If Roll Form did indeed have a claim against plaintiffs, such a claim would be governed by the requirements of the Uniform Commercial Code, since sale of goods is at issue. Under the U.C.C., the allegation of a seller's breach of contract is not a complete defense to an action for the price of accepted goods. G.L.c. 106, § 2-607(1) provides that "the buyer must pay at the contract rate for any goods accepted," with the exception under § 2-717, that allows the buyer, "on notifying the seller of his intention so to do,[10] [to] deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

---

10. The Court has allowed defendant's February 2, 1982 motion to further amend complaint, without prejudice to the motion for summary judgment, by adding paragraph (15) which alleges timely notice, both orally and in writing, by Roll Form as to each breach. Supporting materials are also noted on the issue of defective steel and late deliveries, and notice thereof.

For purposes of this summary judgment motion only, it must be assumed that Roll Form did, in fact, comply with the U.C.C. requirements of notice after acceptance of the goods, and that plaintiffs did breach their contracts for sales of goods in delivering late and defective steel. The only issue, then, is the amount of damages defendant, as guarantor, is entitled to claim by way of set-off.

The court recognizes that under certain circumstances, including insolvency of the principal, the guarantor may be permitted to assert the defenses of its principal in an action on the surety. See Restatement of Security § 133; **In Re Yale Express, supra.** Comment (c) of the Restatement describes the reasoning as follows: "The equitable considerations determining the allowance or refusal to the surety of the principal's right of set-off operate in favor of the surety where the principal is insolvent. The principal is not likely to be damaged by the set-off and other creditors of the principal are in the same position as if the principal had asserted the right of set-off in an action by the creditor against him.".

The court is willing to accept the position of the Restatement as to set-off of any actual, provable damages to Roll Form by reason of late and defective steel deliveries. However, there is apparently little available Massachusetts guidance on this point. The one Massachusetts case cited by defendants for the proposition that there is no limit on the surety's claim of the principal's damages when defending a suit by creditor, is distinguishable from the instant case. See **Albre Marble & Tile Co. v. Goverman,** 353 Mass. 546, 549 (1968).

**Albre Marble** involved a public building construction project and enforcement of statutory security under G.L.c. 149, § 29. The Court found willful violation of a public contract and based its decision, in part, on the "importance of holding those who engage in public contracts to act in strict accord with their undertakings." **Albre Marble** at 549. The Court held that "the plaintiff cannot recover from the defendant bonding company its expenses for faulty performance in willful violation of the contract." **Id.**

The compelling reasons to deny the **Albre** plaintiff recovery are not present here, and the court remains unconvinced that the "equitable considerations" as explained in the Restatement of Securities requires any more than a set-off of actual damages. To allow a guarantor, in an attempt to abrogate his obligation, to assert that the obligee/plaintiff caused the bankruptcy of the principal or other consequential damages, would permit the guarantor, in many cases, to realize 100% of his claim against the principal while all the other principal's creditors would be limited to recovering only a small percent of their claims through dividends subsequent to the bankruptcy proceedings. Such an imbalance of remedies could not fit in with the "equitable considerations" contemplated by the Restatement's drafters, and seems to defeat the purposes of the Bankruptcy Act as well.

During argument the parties stipulated that maximum amount of any set-off that Roll Form might have had against Siderius for actual damages for defective steel and delayed shipment[11] would not exceed one million dollars, and plaintiff Siderius agreed that it might be deducted from any summary judgment entered in its favor. Accordingly, the court in granting summary judgment for the plaintiffs at this time allows this one million dollar deduction as set-off for Roll Form's claims.

11. The court notes, too, that the language of the guarantees expressly states that the Creditors may "...change the time of deliveries...to Principal, without in any manner affecting Guarantor's liability hereunder."

### IV. Counterclaim

Defendant, Paul Sriberg, included in his answer a counterclaim for damages arising out of the same allegations asserted in the fourth affirmative "estoppel" defense. Plaintiffs' motion to dismiss the counterclaim is allowed since the court finds that defendant does not have standing to assert a cause of action against plaintiffs for Roll Form's claims. While set-off is allowed, see above discussion, there is no basis for a separate counterclaim or affirmative recovery. Any suit for damages suffered by Roll Form could only be maintained as a derivative action. See, **Hirshberg v. Appel,** 266 Mass. 98, 100 (1929).

### V. Fifth Affirmative Defense - "Release and Waiver"

At the January 28, 1982 hearing, defendant, Paul Sriberg, sought to amend his answer by adding as a fifth affirmative defense that plaintiffs had released the principal of its indebtedness and thus waived their rights against the defendant under the express terms of the guarantee contracts. Defendant had sought to add this defense at an earlier date but the motion had been deferred to the trial judge without prejudice. As a procedural matter, the court at the January 28-29 hearing allowed the amendment of the defendant's answer, without prejudice to plaintiffs' motion for summary judgment.

Defendant, Paul Sriberg, points to the following clause of the guarantees in his "release and waiver" defense: "Siderius [Federal Steel] agrees that it will not release the principal from any indebtedness without the written authority of the guarantor." Defendant claims that plaintiffs breached this condition 1) by entering into the February 10, 1981 stipulation (Defendant's Exhibit 14) with Roll Form in which Siderius agreed to reduce its claim of $8,806,104.15 to $8,488,668.22, in exchange for Roll Form's allowance of their reduced claim and Federal Steel's entire claim as originally filed, and 2) by effectuating a Plan of Arrangement under Chapter XI of the Bankruptcy Act, the result of which was to release Roll Form from its indebtedness. (See Defendant's Exhibits 10-17). In both of these instances, the plaintiffs did not obtain Sriberg's written authority.

The court finds that the inclusion of this "release" provision in the guarantees is merely a restatement of the law of suretyship and that Section 16 of the Bankruptcy Act directly confronts this issue and compels the court to rule against the defendants on the instant facts.

It is a black letter rule of suretyship law that a "guarantor will be released from his undertaking by any material alteration, made without his consent, of the original obligation or duty to which the guaranty relates..." 38 C.J.S. Guaranty § 72. See, **Boston Box Co. v. Rosen,** 254 Mass. 331, 332 (1926). Under the common law, then, and with or without an express provision, release of the principal's obligations to the obligee would result in the release of the guarantor, unless of course there was a provision to the contrary.

Section 16 of the Bankruptcy Act,[12] 11 U.S.C. § 34, specifically exempts guarantors, where the principal has been discharged in bankruptcy, from this common-law rule: "The liability of a person who is a co-debtor with or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Section 16 of the Bankruptcy Act. Courts confronted with the issue have consistently held that the plain language of the statute requires that the participation by a creditor in a deb-

---

12. Section 16 of the Bankruptcy Act (11 U.S.C. § 34) has been superseded by the new Bankruptcy Act provision, 11 U.S.C. § 524(e). There is absolutely no substantive change in the new section from the law of the old § 16. (The old act was in effect at the time of Roll Form's bankruptcy).

tor's bankruptcy proceeding does not affect the right to pursue the guarantors of the indebtedness of the debtor. See **In re Harvey Cole Co., Inc.,** 2 B.R. 517, 520 (W.D. Wash. 1980); **Guild v. Butler,** 122 Mass. 498, 501 (1877); **United States v. George A. Fuller Co.,** 250 F. Supp. 649 (D. Mont. 1965); **Kelby v. Manufacturers Trust Co.,** 162 F.2d 350, 351 (2nd Cir. 1947); **In re Nine North Church Street, Inc.,** 82 F.2d 186, 188 (2nd Cir. 1936). See also, 3 **Collier on Bankruptcy,** (15th Ed.) par. 524:01(3).

Defendant argues that the Plan of Arrangement confirmed by the Bankruptcy Court on June 5, 1981, violated the release provision since Siderius' acceptance was a prerequisite to confirmation of the plan. See § 362(1) of the Bankruptcy Act, Chapter XI. To accept this reasoning would defeat the very purposes of § 16 and the Bankruptcy Act and would force an unjust choice upon the plaintiffs to either seek the remedies of the bankruptcy court and procure some dividends from the principal's reoganization, or proceed only against the guarantor for the entire indebtedness. If such a choice were necessary, there might also be a serious argument that the plaintiff did not attempt to mitigate its damages against guarantor. It makes no sense to penalize plaintiffs for their involvement in the federal bankruptcy proceedings.

Defendants argue that the stipulation agreement between plaintiffs and Roll Form during the bankruptcy proceedings was totally voluntary and therefore, should not come within the protection of § 16. This agreement must also be rejected. The agreement involved reductions of proofs of claims filed by plaintiffs, subsequent to the filing of the Chapter XI Bankruptcy by Roll Form, in an attempt to expedite the proceedings. This too was contemplated by § 16, under the same rationale as above. Cf. **Melo v. National Fuse and Power Company,** 267 F. Supp. 611 (D. Colo. 1967). "The surety's obligation to creditors following the default of the principal is not altered by the principal's composition agreement,

even though the creditors voluntarily participated therein, or by bankruptcy or § 77B reorganization proceedings resulting in exoneration of the principal for further liability for the debt." Sterns, **Law of Suretyship** § 11-9, citing, **American Surety Co. v. Bethlehem National Bank,** 314 U.S. 314 (1941).

The court finds no support for distinguishing this case from the overwhelming authority interpreting the predominance of the Bankruptcy Act provision, simply because the defendant had included an express restatement of law.

Defendant argues that the word "release" is ambiguous and thus, an examination of extrinsic facts must be made in order to determine the true meaning of the contract. It is quite clear that "the liability of the defendant as guarantor is to be ascertained from the terms of the written contract, construed according to the usual rules of interpretation read in connection with the subject matter, the relations of the parties to the transaction, and the well understood usages of business. **Schneider v. Amour,** 323 Mass. 28, 30 (1948). Under this standard, the guarantees do not require a reading of the "release clause" beyond its usual meaning — that is, the incorporation of the law of suretyship, with "release" meaning an ordinary private agreement, not an agreement in participation with the bankruptcy court, which could only be put into effect by operation of law. See generally, **In re American Paper Co.,** 255 Fed. 121 (D.N.J. 1919), noted with approval in **B.M.C. Durfee Trust Co. v. Steiger,** 296 Mass. 136, 139 (1936) (discussion of "release" as opposed to "discharge" in bankruptcy).

The parol evidence rule excludes any introduction of extrinsic antecedent evidence to show any meaning inconsistent with the unambiguous writing. See, 3. **Corbin** § 573.

Moreover, even if this court were to interpret the phrase "will not release" as ambiguous so as to admit the evidence of negotiations prior to the contracts' formation, defendant's argument would still

fail as a matter of law. Firstly, where guarantors were authors of the guaranty agreement, as in the case regarding this disputed provision, the agreement will be construed strictly against the guarantors. **Merrimack Valley National Bank v. Baird,** 372 Mass. 721, 724 (1977). More importantly the evidence of "negotiations" (Robert and Paul Sriberg's affidavits and defendant's exhibits 1 and 2) indicate only the intent of the **defendants** to have the provision protect defendant in the event of such bankruptcy participation. Robert Sriberg admits that plaintiffs only assented to the provision without question or comment. (Affidavit of R. Sriberg, par. 4). The rationale for construing the contract against the author is to avoid the instance where without discussion or negotiation the author "slips in" a seemingly innocuous clause and then claims a different intent. See **N.J. Gendron Lumber Co. v. Great Northern Homes, Inc.,** Mass. App. Ct. Adv. Sh. (1979) 1927, 1934.

### VI. Sixth Affirmative Defense

On February 2, 1982, defendant Paul Sriberg submitted a motion to further amend his answer by adding a sixth affirmative defense of fraud. Defendant sought to allege knowledge by plaintiffs that Paul Sriberg relied on continuity of supply from plaintiffs, that plaintiffs knew that there were six outstanding orders to them from Roll Form and that they intended to cancel these orders, and that plaintiffs knew that Sriberg would not sign the guarantees if he knew of the impending cancellation.

Defendant's motion to amend his answer by adding this defense is denied. At the time the motion was introduced, this case was scheduled for trial on the following day. This placed an unfair burden on plaintiffs and was particularly inappropriate in light of earlier orders for speedy trial and termination of discovery.[13] Due to the untimeliness of this offered amendment, justice requires that leave to amend not be allowed. See Mass. R. Civ. P. 15(a).

The court notes further that the offered affirmative defense of fraud was not pleaded with sufficient specificity since defendant neglected to allege a specific misrepresentation. See Mass. R. Civ. P. 9(b); **First National Bank of Boston v. Slade,** Mass. Adv. Sh. (1979) 2509; **Synthetic Materials Corp. v. Maciel,** Mass. App. Ct. Adv. Sh. (1979) 2411, 2412.

Finally, the court believes that Sriberg's claims of fraud, based on either late deliveries or cancelled orders, were waived because Sriberg did not repudiate the guarantees. **Newell v. Rosenberg,** 275 Mass. 455, 457 (1931), 38 Am. Jur. 2d, Guaranty § 57.

### Damages

Siderius, Inc. has submitted thirteen outstanding invoices reflecting the amount owed by Roll Form for steel purchases, totalling $7,180,221.70. (Affidavit of Goss, par. 7, attachment "C"). Also submitted were thirty-eight debit memos reflecting amounts owed by Roll Form to Siderius, for storage and interest charges, totalling $1,625,882.45. (Affidavit of Goss, par. 8, attachment "D"). The total of the thirteen outstanding invoices and the thirty eight outstanding debit memos is $8,806,104.15.

Plaintiff Siderius is claiming, in this suit, no more than the amount of the negotiated proof of claim of the New York Bankruptcy proceeding, that is $8,488,668.22. (Exhibit "A for Identif.")

From this figure, one million dollars is deducted as set-off, in agreement with Paul Sriberg, for actual damages, bringing the balance to $7,488,668.22. The $500,000.00 deductible of the guarantee reduces this to $6,988,668.22 and the further reduction of $145,063.19 for the distribution from the bankruptcy (Affidavit of Goss, attachment "F"), leaves a total owing to Siderius of $6,843,605.03.

Federal Steel has submitted a true copy of its accounting records. (Affidavit of Goss, par. 9, attachment "E") The outstanding total owed to Federal by Roll Form is in the amount of $819,454.74.

---

13. On October 5, 1981, Chief Justice Lynch denied defendant's motion to enlarge time for completing discovery.

This is also the amount of the proof of claim filed with the Bankruptcy Court. Reducing this figure by the $500,000.00 deductible and the $14,004.35 bankruptcy distribution leaves a sum of $305,490.36 owing to Federal Steel.

Defendant, Paul Sriberg, does not dispute these figures.

In summation, the following motions have been brought in this case:

1) January 11, 1982 - **Plaintiffs' Motion to Strike Defendant Paul Sriberg's First, Third and Fourth Affirmative Defenses.**

    January 28, 1982 - Defendant Paul Sriberg waived the third affirmative defense. Stricken from pleadings.

    January 29, 1982 - Treated as Motion for Summary Judgment.

2) January 11, 1982 - **Plaintiffs' Motion to Dismiss Defendant Paul Sriberg's Counterclaim**

    March 24, 1982 - **ALLOWED.**

3) January 26, 1982 - **Defendant Paul Sriberg's Motion to Amend His Answer by Adding a Fifth Affirmative Defense.**

    January 29, 1982 - **ALLOWED,** without prejudice.

4) February 2, 1982 - **Defendant Paul Sriberg's Motion to Amend His Answer by Adding Paragraph 13, Paragraph 15, and a Sixth Affirmative Defense.**

    February 2, 1982 - ALLOWED, as to paragraphs 13 and 15. March 24, 1982 - DENIED, as to the Sixth Affirmative Defense.

5) February 3, 1982 - **Plaintiffs' Motion to Strike Defendant Paul Sriberg's Fifth Affirmative Defense**

    February 3, 1982 - Treated as Motion for Summary Judgment.

6) February 3, 1982 - **Plaintiff's Motion for Summary Judgment.**

    March 24, 1982 - ALLOWED, as to Paul Sriberg, only.

### Order

On the basis of the foregoing, summary judgment is entered in favor of the plaintiff, Siderius, Inc. for the sum of $6,843,605.03. Summary judgment is entered in favor of the plaintiff, Federal Steel Corp., in the sum of $305,490.36. Motion to dismiss defendant's counterclaim is ALLOWED.

Judgment is entered only as to defendant, Paul Sriberg, pursuant to Mass. R. Civ. P. 54(b).

**Robert J. Hallisey**
**Justice of the Superior Court**

### GUARANTY

IN CONSIDERATION of your extension of credit on such terms, at such times and in such amounts as you shall deem proper, to Roll Form Products, Inc., Boston, Massachusetts, PRINCIPAL, the undersigned, as GUARANTOR, does hereby **unconditionally** guarantee to SIDERIUS, INC., its successors and assigns, punctual payment at maturity of all invoices and accounts, and all other indebtedness which PRINCIPAL does now or may hereafter owe to you.

GUARANTOR agrees that you may change the form of such indebtedness, whether evidenced by invoice, bill, book account, note or acceptance; extend said indebtedness, or any part thereof, or **change the time of deliveries** or payment or otherwise modify the terms of sales to PRINCIPAL, all without in any manner affecting GUARANTOR's liability hereunder. GUARANTOR agrees also that in the event of default by PRINCIPAL, GUARANTOR's liability hereunder shall not be conditioned upon your first instituting suit against PRINCIPAL.

SIDERIUS agrees that it **will not release** the PRINCIPAL from any indebtedness without the written authority of the GUARANTOR.

In the event that the GUARANTOR pays the indebtedness of the PRINCIPAL to SIDERIUS, the GUARANTOR shall, upon request, receive an assignment of claims of SIDERIUS against the PRINCIPAL.

SIDERIUS agrees that it will give the GUARANTOR thirty (30) days written notice by registered or certified mail prior to instituting any action under this guaranty.

This guaranty shall only be effective as to the indebtedness from ROLL FORM PRODUCTS to SIDERIUS, INC. which exceeds five hundred thousand ($500,000.00) dollars in the aggregate for all invoices.

Given to_____in the State of _____this 3rd day of August, 1978.

GUARANTOR: **Paul Sriberg**