LAWRENCE R. GLYNN, receiver, *vs.* CITY OF GLOUCESTER.

Middlesex. January 21, 1980. — March 25, 1980.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Contract,* Building contract, With public agency, Modification. *Practice, Civil,* Master: findings, objections to report.

In an action heard by a master under a nonjury order of reference with evidence to be left unreported, the judge erred in denying the defendant's motions to strike the master's ultimate findings or to recommit for summaries of the evidence where the master's findings, both subsidiary and general, were insufficient to permit the judge to address adequately the dispositive legal questions. [456-459]

Legal principles governing a contractor's right to recover from a public agency for breach of a public construction contract. [459-462]

CIVIL ACTION commenced in the Superior Court on July 23, 1976.

The case was heard by *Alberti,* J., on a master's report.

*Norman C. Ross,* City Solicitor, for the defendant.

*Charles P. Burgess* for the plaintiff.

GREANEY, J. The city of Gloucester appeals from orders denying its motions (predicated on objections) challenging subsidiary and general findings in a master's report and adopting the report and from a judgment awarding the plaintiff, as receiver of R. & J. Salvucci Corporation (Sal-

vucci), $243,007.05 in damages (and $95,711.47 in interest) for several alleged breaches by the city of its road construction contract with Salvucci.[1] We reverse the judgment, holding that the report in its present form should not have been adopted but rather should have been recommitted for additional findings, summaries of the evidence, and production of certain exhibits.

The procedural background follows. Salvucci contracted to construct a road in and through the Cape Ann Industrial Park in Gloucester. Work commenced around July 1, 1972, and was completed on October 31, 1973. In July, 1976, Salvucci's receiver filed suit against the city. The amended complaint claimed that the contractor had incurred $528,753.76 in damages stemming from certain activities by the city in violation of the contract, among them a refusal to provide a disposal area for inorganic debris removed from the job, a failure seasonably to designate areas where suitable off-site borrow could be obtained, and a refusal to grant reasonable relief when the contractor encountered subsurface soil conditions at variance with those to be anticipated from the plans and test borings. The master, acting under a non-jury order of reference with evidence to be left unreported, found that the city had breached the contract: (1) by misrepresenting the subsurface soil conditions on the plans and thereafter refusing to allow Salvucci to deal with the actual conditions in a reasonable and economical fashion; (2) by seeking to impose a charge for use of the city dump in violation of a contract provision that promised a free disposal site for inorganic debris; (3) by ordering Salvucci to rebuild the road's embankments after rocks buried in their sides at the engineers' directions had caused concave slopes; and (4) by failing, as required by the agree-

---

[1] The city does not attack that part of the judgment dismissing its counterclaim seeking damages for Salvucci's late completion of the contract. The city's appeal from the denial of its motion for attorney's fees and costs pursuant to G. L. c. 231, § 6F, inserted by St. 1976, c. 233, § 1, has not been briefed or argued, and is considered waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

ment, to designate a suitable area for the excavation of usable gravel borrow and fill for the road's subgrade. The master also found that a memorandum signed by Salvucci's president just prior to the job's completion, which stated that the contractor had no present or anticipated claims under the agreement against the city, did not constitute a waiver or release of the contractor's rights, and that, if the memorandum was held sufficient to waive or release Salvucci's claims, it was signed under duress. Finally, the master found that, although Salvucci had failed to comply with the contract procedure for claiming payment for extras, the city was "aware that the corporation was incurring . . . extra costs and intended to make a claim in connection therewith."

Following the filing of the report, the city, punctiliously adhering to the requirements of Mass.R.Civ.P. 53, as amended, 367 Mass. 917 (1975), and Rule 49(7) of the Superior Court, as amended (1976), as explained by the cases (see post-1976, *Miller* v. *Winshall, ante* 312, 315-317 [1980]), filed fifteen specific and detailed objections which challenged the legal sufficiency of specific parts of the report. Wherever the objections questioned the adequacy of the underlying evidence to support the master's subsidiary findings, fair summaries of the evidence were requested, and annexed to each such objection, as required by the rule, were references to the portions of the approved transcript (by volume, page and line) where the material and relevant testimony necessary for each summary could be found. Wherever the objection depended on a documentary exhibit, the exhibit or specific portion thereof that was needed was identified with particularity. Each objection, wherever pertinent, reasonably synopsized the city's view of the contents of the evidence it relied upon for support. Together with the objections, the city filed motions to strike the master's ultimate findings or to recommit for summaries of the evidence. *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 282-283 (1976).

1. The central task confronting the court based on the report's findings was one of contract interpretation. *Daley*

v. *J.F. White Contr. Co.*, 347 Mass. 285, 288 (1964). *Gil-Bern Constr. Corp.* v. *Medford*, 357 Mass. 620, 623 (1970). As discussed more fully in part 2 of this opinion, the judge needed to determine whether Salvucci's claims arose in connection with its performance of the contract. If so, recovery for extras would hinge on the contractor's showing that it had complied with the notice, claim and cost adjustment clauses in the agreement (paragraphs 17, 21, and 22 of the General Conditions), and with applicable provisions of the "Standard Specifications for Highways, Bridges and Waterways" adopted by the Commonwealth's Department of Public Works (the Blue Book), or in the alternative, that the city had waived or excused compliance with the necessary formalities. Certain statutes governing claims of this sort, as will be noted, also might apply to Salvucci's right to recover.

In our view, the master's findings, both subsidiary and general, are insufficient to permit a judge to address adequately the dispositive legal questions. The report does not (as it should) disclose on its face all the subsidiary findings which the master had in mind and upon which he based his general findings. *Bills* v. *Nunno, supra* at 282, and cases cited. The subsidiary findings on several of the vital issues are vague and non-specific and leave the general findings ultimately predicated thereon lacking in sufficient foundation. See *Lattuca* v. *Cusolito*, 343 Mass. 747, 752-753 (1962), and cases cited. By way of examples, the report fails to indicate what action Salvucci took to clarify an obvious deviation from the terms of the contract when the city sought to charge Salvucci for the use of its dump for disposal of inorganic as well as organic materials[2] (see *John F. Miller Co.* v. *George Fichera Constr. Corp.*, 7 Mass. App. Ct. 494, 499 [1979]); it fails to indicate precisely what the preliminary test-borings indicated;[3] it fails to find

---

[2] The city's twelfth objection, while conceding that the attempted charges for disposal of inorganic materials violated the contract, indicates that any problem with this aspect of the contract may have been a misunderstanding which, when called to the city's attention, was immediately corrected.

[3] The city contends that the plans and specifications will show that the test borings warned the contractor that he would encounter "boney" subsoil conditions (as ultimately found) in the roadbed.

whether the extras had written or express approval by the project engineer, implying that one claim may not have (screening plant) and that another might have (slope reconfigured at engineers' "direction"); it leaves the damages only loosely accounted for with much emphasis on reasonableness. The report is replete with rulings of law which were not expressly addressed by the judge. Some of the other defects in the report are noted in the margin.[4] The master also failed to incorporate all relevant portions of the contract and such of the documents integrally related to it (plans, specifications, Blue Book and borings) that are needed for analysis of the legal questions. Only a few provisions of the contract are set out in the report, and as to one of those provisions, the city has made it appear that the provision quoted contains a serious omission which might affect and fatally impair certain general findings.[5] The Blue Book's provisions concerning scope and control of the work, and materials specifications should be made a part of the report. The judge should have exercised his right to call for the contract documents but did not,[6] and it will not help things for us to

[4] The report does not tell us whether the contract price was paid, or what extras were in fact adjusted under the contract. It finds that the city "intended" to charge for dumping privileges without amplification. It states with regard to the designation of an off-site excavation area that an agent of the Gloucester Industrial Development Commission imposed "onerous burdens" on Salvucci without specification as to what these burdens were. It does not explain the extra work Salvucci was required to do in the industrial park as a condition of obtaining off-site borrow or whether this work was included in the computation of damages.

[5] According to the city's objection 11, the paragraph of the contract referred to in the report with regard to the selection of off-site borrow areas omits by use of an ellipsis that part of the contract which indicated the parties' agreement to use an area within lots 5-30 in the Cape Ann Industrial Park as shown on a designated site plan. Thus it may be, as the city contends, that the general area had been preselected, and that the improvement of certain lots within the park had been agreed to as part of the use of the site for excavation. There is also a question whether there was any serious delay on the city's part in designating a specific site within the general area for excavation.

[6] We do not accept the city's argument that the exhibits are automatically before the reviewing court by reason of the language in Mass.R.Civ.

do so because resolution of the issues first requires additional findings of fact and completion of the summaries of evidence. A reading of the leading case of *State Line Contractors, Inc.* v. *Commonwealth,* 356 Mass. 306 (1969), which deals with claims analogous to the ones in issue here, aptly illustrates that this type of controversy cannot be determined without a study of all the pertinent contract documents based upon complete and detailed findings by the trier. All the areas where further findings or summaries are needed are pinpointed by the objections.

We conclude that the city has demonstrated probable error on the face of the report (*Minot* v. *Minot,* 319 Mass. 253, 258 [1946]; contrast *H. Piken & Co.* v. *Planet Constr. Corp.,* 3 Mass. App. Ct. 246, 248-249 [1975]), and that a sufficient foundation has been laid by the objections to necessitate the making of additional subsidiary findings or to make the absence of evidentiary support for the findings apparent. *Bills* v. *Nunno,* 4 Mass. App. Ct. at 282-283 n.3. We also conclude that the judge could not have settled the legal questions raised by the report without examination of the pertinent exhibits specified by the objections, particularly the contract, and the various reports, documents, plans and specifications incorporated therein. Under these circumstances, the judge abused his discretion in denying the city's motions designed to put the report in a posture where it could be intelligently studied. *S. D. Shaw & Sons* v. *Joseph Rugo, Inc.,* 343 Mass. 635, 639-640 (1962). Contrast *Tzitzon Realty Co.* v. *Mustonen,* 352 Mass. 648, 651 (1967); *H. Piken & Co.* v. *Planet Constr. Corp.,* 3 Mass. App. Ct. at 248.

2. To speed disposition of the case, we briefly comment on the legal principles that are to be applied to the facts once the report is put in good order.

P. 53(e)(1), as amended, 367 Mass. 917 (1975), directing the master to file the exhibits with the clerk of the lower court. This part of the rule is merely for housekeeping purposes to ensure that the exhibits will not be lost or mislaid. See *M.L. Shalloo, Inc.* v. *Ricciardi & Sons Constr.,* 348 Mass. 682, 686-687 n.5 (1965); *Powell's Gen. Contr. Co.* v. *Marshfield Housing Authy.,* 7 Mass. App. Ct. 763, 768 (1979); Rule 50 of the Superior Court (1974).

On a public construction contract, if actions or require-
ments of the public agency necessitate changes in the work
as it progresses, thereby causing the contractor to perform
extra work or incur added expense, or if the contractor en-
counters materially different conditions from those predicted
by the plans, specifications, preliminary borings and esti-
mates, the contractor must follow the procedures spelled
out in the contract and in the Blue Book, if incorporated in
the contract, to adjust the price before unilaterally accruing
expenses to be pursued later on breach of contract or quan-
tum meruit theories. See *United States* v. *Utah Constr. &
Mining Co.,* 384 U.S. 394, 404 n.6 (1966); *Morrison-
Knudsen Co.* v. *United States,* 345 F.2d 833, 837 (Ct. Cl.
1965), *S.C.* 397 F.2d 826 (Ct. Cl. 1968); Kelly, Government
Contractors' Remedies: A Regulatory Reform, 18 Admin.
L. Rev. 145, 145-146 (Fall 1965). See also *M. DeMatteo
Constr. Co.* v. *Commonwealth,* 338 Mass. 568, 587-593
(1959); *Marinucci Bros.* v. *Commonwealth,* 354 Mass. 141,
145 (1968); *State Line Contractors, Inc.* v. *Commonwealth,*
356 Mass. 306, 318-319 (1969). See as well G. L. c. 30,
§ 39I, inserted by St. 1960, c. 771, § 1A;[7] G. L. c. 30,
§ 39N, inserted by St. 1972, c. 774, § 4.[8] The public
authority is expected to address the contractor's legitimate
problems in good faith in an effort to formulate an adjust-
ment of the price which will equitably compensate the con-

---

[7] This statute provides that wilful and substantial deviations from the
project's plans and specifications cannot be made unless authorized in
writing by the awarding authority or the engineer who is in charge of the
work, and only when certain certifications approving the deviations have
been made by the awarding authority, including, where applicable, a
certification that "an equitable adjustment has been agreed upon between
the contracting agency and the contractor and the amount in dollars of
said adjustment."

[8] This statute provides that contracts of the type in issue here (see G. L.
c. 30, § 39M, as amended by St. 1967, c. 535, §§ 4 & 5) must contain
equitable adjustment provisions to cover site conditions which differ
substantially or materially from conditions indicated in the plans or con-
tract documents. Although this statute was enacted after the execution of
Salvucci's contract, the contract's adjustment provisions appear to ac-
complish the same purpose.

tractor for bona fide extras.[9]  Generally, a failure by the contractor to invoke its remedies under the agreement and Blue Book will preclude all relief (*Lewis* v. *Commonwealth,* 332 Mass. 4, 5-6 [1954]; *State Line Contractors, Inc.* v. *Commonwealth,* 356 Mass. at 316-319), unless the contractor can demonstrate that the particular claim falls outside the contract, and because of the agency's conduct, constitutes a true breach. *United States* v. *Utah Constr. & Mining Co.,* 384 U.S. at 404-405, 412-413.  If any claim arises from the contractor's wilful and substantial deviation from the plans and specifications, there can be no recovery without a showing of compliance with the requirements of G. L. c. 30, § 39I (see note 7, *supra*).  See *Morse* v. *Boston,* 253 Mass. 247, 252-253 (1925); *Albre Marble & Tile Co.* v. *Goverman,* 353 Mass. 546, 550 (1968); Rep. A.G., Pub. Doc. No. 12, at 126-128 (1964).  This statute establishes a clear legislative policy that "those who engage in public contracts . . . [must] act in strict accord with their undertakings . . . ."  *Albre Marble & Tile Co.* v. *Goverman,* 353 Mass. at 549.  To the degree, however, that the claim does not arise from such a wilful and substantial deviation, the contractor may recover if he can show that the public agency has waived or excused compliance with the terms of the contract (see, for example, *Costonis* v. *Medford Housing Authy.,* 343 Mass. 108, 113 [1961]; *Powell's Gen. Contr. Co.* v. *Marshfield Housing Authy.,* 7 Mass. App. Ct. 763, 766-768 (1979) [waiver]; *D. Federico Co.* v. *New Bedford Redev. Authy., ante* 141, 143-144 [1980] [excuse]).  If

---

[9] The adjustment remedies benefit both the contractor and the public agency.  The agency customarily relies on the changed conditions and extra work clauses to remove unknown risks from competitive bidding and to obtain favorable bid prices stripped of such risk factors.  Such a policy benefits the agency by keeping costs down and benefits bidders by assuring them that they can be compensated by formulae for overcoming sub-surface conditions and for extra work not anticipated in their bid estimates, or suggested by available data or by site inspection.  The purposes of these safety valve provisions are discussed in *Kaiser Indus. Corp.* v. *United States,* 340 F.2d 322, 329-330 (Ct. Cl. 1965), and *Foster Constr. C.A. & Williams Bros.* v. *United States,* 435 F.2d 873, 887-888 (Ct. Cl. 1970).

the claims are found to involve changes in or additions to the work under the contract, inquiry must also be made whether the appropriation requirements of G. L. c. 44, § 31, have been complied with. See *Dyer* v. *Boston*, 272 Mass. 265, 274 (1930); *Continental Constr. Co.* v. *Lawrence*, 297 Mass. 513, 514-516 (1937); *Duff* v. *Southbridge*, 325 Mass. 224, 228 (1950); *Rich & Son Constr. Co.* v. *Saugus*, 355 Mass. 304, 306-307 (1969); *Arthur R. Murphy, AIA, & Associates* v. *Brockton*, 364 Mass. 377, 380 (1973). Cf. *Lawrence* v. *Falzarano*, 380 Mass. 18, 24-26 (1980), involving G. L. c. 44, § 31C.

Moreover, if the contractor argues (as it does here) that the agency waived compliance with the contract's provisions, it is incumbent on it to show not only that G. L. c. 30, § 39I, is inapplicable, but also that there was clear, decisive, and unequivocal conduct on the part of an authorized representative of the agency indicating that it would not insist on adherence to the agreement.[10] *Cashman* v. *Boston*, 190 Mass. 215, 218-219 (1906). *Millen* v. *Boston*, 217 Mass. 471, 472-473 (1914). *Lewis* v. *Commonwealth*, 332 Mass. at 6, and cases cited. *Savignano* v. *Gloucester Housing Authy.*, 344 Mass. 668, 671-672 (1962). These principles would apply in kind to consideration of the city's argument that Salvucci waived any enforceable contract claims that it possessed. Finally, the question of economic duress, if reached, is to be examined in light of the discussion of that subject in the recent decision of *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, 8 Mass. App. Ct. 340 (1979).

3. This case, as have many others before it, illustrates that the experience with references to masters has not been a happy one. Stripped of excess baggage, this case involves questions of contract interpretation and construction which

---

[10] The present finding of the master that "the defendant was aware" that Salvucci was doing extra work and intended to bring a claim to recover for that work is inadequate without supporting subsidiary findings to warrant a conclusion of waiver by an authorized representative of the city.

have always been better left to a judge than a master. See *D. Federico Co.* v. *New Bedford Redev. Authy.,. supra* at 143, and cases cited; *Stock & Grove, Inc.* v. *United States,* 493 F.2d 629, 645 (Ct. Cl. 1974). A trial before a judge would supply us with a record containing findings of fact on all the essential issues, and the underlying evidence including the important exhibits. With the Superior Court now fully staffed and with congestion in the civil dockets beginning to lessen, the primary reason for the use of masters to settle facts in civil cases has lost most of its force. See Reardon, Civil Docket Congestion — A Massachusetts Answer, 39 B.U. Law Rev. 297, 308-310 (1959). Other arguments in support of the practice are outweighed by the delay, extra expense and frustration that inevitably results.[11] The device of sending cases out to be heard by a busy lawyer has been the subject of steady criticism by the Supreme Judicial Court (see *O'Brien* v. *Dwight,* 363 Mass. 256, 279-280 [1973]; *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159, 161-163 [1979]) and divests the litigants of their right to have a trial by the court. Only special circumstances should justify a reference. Such references may include construction cases where an inordinate amount of court time will be spent sorting out tedious details. Apart from these cases, references should not be considered[12] because (as in the case here) we think a judge armed with pretrial memoranda and a sharp pencil is in a far better position than a master to separate the lawsuit's wheat from its chaff and to bring the case to an orderly and fair conclusion.

[11] Constant tinkering with Rule 49 of the Superior Court, as amended (1976), and its predecessors to create a basis for review of a report and decades of cases interpreting and applying the rule's standards in an effort to formulate an efficient and understandable framework for the study of reports have only led to additional mystification on the part of lawyers who in good faith are attempting to attack a master's subsidiary and general findings.

[12] It is questionable now whether even trade secret cases, which have always been considered suitable grist for the master's mill, are appropriate for referral in view of the length of time they take before the master and the complications that ensue. See *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159 (1979); *Dynamics Research Corp.* v. *Analytic Sciences Corp., ante* 254 (1980).

Paragraph one of the judgment is reversed. The orders adopting the master's report, overruling the city's objections, and denying its several motions are reversed. The action is to stand for further proceedings in the Superior Court consistent with this opinion.

*So ordered.*