# United States Court of Appeals
## For the First Circuit

No. 07-1476

TRANS-SPEC TRUCK SERVICE, INC.,
d/b/a TRUCK SERVICE,

Plaintiff, Appellant,

v.

CATERPILLAR INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella, Lipez,and Howard,
Circuit Judges.

Christian G. Samito, with whom Nancy M. Reimer and Donovan Hatem LLP were on brief, for plaintiff-appellant.
John A. K. Grunert, with whom Campbell Campbell Edwards & Conroy, P.C. was on brief, for defendant-appellee.

April 30, 2008

**LIPEZ, <u>Circuit Judge</u>**.  This case requires us to apply the accrual and statute of limitations provisions of the Uniform Commercial Code of Massachusetts to breach of warranty claims brought by Trans-Spec Truck Service ("Trans-Spec") against Caterpillar, Inc.  Trans-Spec purchased twenty-two heavy-duty, custom-built trucks powered by Caterpillar engines.  More than four and a half years after it took delivery of the trucks, Trans-Spec filed suit against Caterpillar, alleging breach of warranty, violation of Massachusetts's unfair trade practices act, Mass. Gen. Laws ch. 93A, and negligence, arising from failures in the flywheel housings in a significant number of the Caterpillar-powered trucks.  Accepting the recommendation of the magistrate judge, the district court dismissed Trans-Spec's warranty and chapter 93A claims as time-barred.  Caterpillar then won summary judgment on the remaining negligence count.  We affirm.

**I.**

We draw on the summary judgment record for the relevant background.  In March 1999, Trans-Spec and Sterling Truck Corporation[1] prepared a "specification proposal" for twenty-two heavy-duty, custom-built trucks that Trans-Spec intended to purchase from Sterling for use in Trans-Spec's oil delivery and dump trailer operations.  The proposal called for installation of Caterpillar's C-12 model engines in each of the trucks.  Trans-Spec

---

[1]Sterling Truck Corporation is not a party to this suit.

allegedly decided upon Caterpillar engines after extensive conversations with Caterpillar's employees and agents regarding engine specifications and performance, the terms of the warranty, and which engine manufacturer would "stand behind their warranty the best." As a non-party witness testified at a deposition, Caterpillar representatives "bragged that engine up like there was no tomorrow." After finalizing the agreement, Caterpillar shipped completely assembled engines to Sterling for installation in the trucks. In December 1999 and January 2000, Trans-Spec took delivery of the trucks and put them into service.

By late 2001, serious problems had begun to develop with the flywheel housing on the Caterpillar engines in several of Trans-Spec's trucks. The housings loosened and cracked, leading to disruptions in the use of the trucks and time-consuming repair efforts. Caterpillar reimbursed Trans-Spec for the cost of the repairs to the first six trucks that experienced these flywheel housing failures in 2001 and 2002. When a seventh truck became inoperable, Caterpillar refused to pay for additional repairs. Since that time, Trans-Spec avers that an average of six, and as many as ten, of the twenty-two trucks have been inoperable at any given time due to engine-related issues. Because Trans-Spec's business requires all of its trucks to operate six days a week, it has incurred operating losses as a result of the failure of the trucks. Trans-Spec made in-house repairs on the trucks, requiring

it to hire additional mechanics, and in some instances performed the same repair procedure multiple times on the same truck engine. Trans-Spec alleges that these engine problems have resulted in trucks leaking oil in violation of environmental laws. Trans-Spec also alleges that the failures have lowered the resale value of the trucks and prevented Trans-Spec from trading them in for newer vehicles as it normally would.

Trans-Spec claims that the flywheel housing failures were caused by a major design defect in the C-12 engine, and that Caterpillar knew or should have known of this defect. Trans-Spec contends that the housing failures fell under the Caterpillar warranty and that Caterpillar should have rectified the problems. Trans-Spec also avers that, at meetings in June and August 2004, Caterpillar acknowledged responsibility for the flywheel housing failures and promised to "make [Trans-Spec] whole." In August 2004, apparently unpersuaded by this promise, Trans-Spec filed this suit against Caterpillar.

Trans-Spec's initial complaint alleged breach of warranty (Count I) and violations of Massachusetts General Laws chapter 93A (Count II). Its second amended complaint added a negligence claim (Count III) as well. Caterpillar moved to dismiss the second amended complaint on the grounds that Counts I and II were time-barred and that Count III was barred by the economic loss doctrine. The magistrate judge recommended that the district court grant the

motion to dismiss as to Counts I and II and deny the motion on Count III. The district court accepted these recommendations over Trans-Spec's objections. Trans-Spec's motion to further amend its second amended complaint or alter the court's dismissal order was subsequently denied as well. Caterpillar then moved for summary judgment on the remaining negligence claim on the basis of a negligence disclaimer included in one of the Caterpillar warranty documents. The magistrate judge recommended that the motion be granted and the district court agreed. The instant appeal ensued, with Trans-Spec arguing error on each of the adverse rulings below.

## II.

We begin with the district court's determination that Counts I and II of Trans-Spec's complaint are time-barred. We review the grant of a motion to dismiss de novo, accepting as true the factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff. Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). We affirm the dismissal if the complaint fails to state facts sufficient to establish a "claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'"

-5-

Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir. 1989)).  Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to "sketch a factual predicate" that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate.  See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-10 (1st Cir. 1998); Blackstone Realty, 244 F.3d at 197.

## A.  Scope of the Record Subject to Review

Before proceeding to our substantive analysis of the applicability of the statute of limitations to Counts I and II of Trans-Spec's complaint, we must first clarify the scope of the record subject to our review.  The controlling pleading is Trans-Spec's second amended complaint.  Appended to this complaint is a document titled "On-Highway Vehicle Engine Extended Service Coverage" (hereinafter "ESC"), which Trans-Spec refers to in the complaint[2] and in its opposition to Caterpillar's motion to dismiss as "the Caterpillar warranty" that forms the basis of its claims.  Neither party disputes that the appended ESC was incorporated into the complaint and properly considered at the motion to dismiss stage.

---

[2]Subsequent references to "the complaint" refer to Trans-Spec's second amended complaint unless otherwise indicated.

-6-

However, Trans-Spec seeks to rely on several additional documents to defeat the motion to dismiss. First, Trans-Spec appended documents to its opposition to Caterpillar's motion to dismiss, including excerpts of deposition testimony and affidavits that Trans-Spec wished to use to establish that Caterpillar should be equitably estopped from asserting the statute of limitations. After the magistrate judge recommended that Caterpillar's motion to dismiss be granted without considering the additional documents submitted by Trans-Spec, Trans-Spec's objection to the magistrate judge's report and recommendation also included as an exhibit a copy of another document, titled "Caterpillar Limited Warranty." Trans-Spec referred to this document as the "two-year warranty," and asserted, for the first time in its objection to the magistrate judge's report, that this document formed the basis for an additional warranty claim that would not be barred by the statute of limitations. Caterpillar promptly asked the district court to strike all of the additional documents submitted by Trans-Spec. The district court deemed this motion moot because both the district court and the magistrate judge had explicitly disregarded the appended documents as outside the pleadings, and hence inapplicable to a Rule 12(b)(6) determination.

Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are

-7-

considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment. Garita Hotel, 958 F.2d at 18. Exhibits attached to the complaint are properly considered part of the pleading "for all purposes," including Rule 12(b)(6). Fed. R. Civ. P. 10(c); Blackstone Realty, 244 F.3d at 195 n.1. Additionally, we have noted that "[w]hen . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998); see also Clorox Co. P. R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint'" (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1120 (1st Cir. 1996))).

At the discretion of the district court, a motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling. Fed. R. Civ. P. 12(d); Garita Hotel, 958 F.2d at 18. However, if the district court chooses, as it did here, to ignore supplementary materials submitted with the motion papers and

determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion. Garita Hotel, 958 F.2d at 18-19. We review a motion to dismiss using the "same criteria that obtained in the court below." Id. at 17. As a result, we review only those documents actually considered by the district court in its Rule 12(b)(6) analysis unless we are persuaded that the court below erred in declining to consider the proffered documents. See Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004).

Trans-Spec does not argue in its opening brief that the district court abused its discretion by refusing to convert the motion to dismiss to a motion for summary judgment nor that it erred by choosing to disregard the documents appended to Trans-Spec's opposition to the motion to dismiss or included as an exhibit to Trans-Spec's objection to the magistrate judge's report and recommendation. Instead, Trans-Spec's opening brief marshals these documents in support of its argument as if they had been part of the record considered by the court below in deciding the Rule 12(b)(6) motion. Thus, rather than assigning error to the decision of the district court to disregard the supplemental documents, Trans-Spec's opening brief ignores that decision and, by doing so, misrepresents the state of the record. Caterpillar forcefully argued this misrepresentation in its responsive brief. Then, in

Trans-Spec's reply brief and at oral argument, Trans-Spec finally argued that the district court erred in refusing to consider these supplemental documents in its review and it argued that we should consider them in our review. That argument came too late. See Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983) ("In preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed, and appellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument."). Accordingly, in our review of the motion to dismiss, we will consider, as the district court did, only the facts and inferences fairly gleaned from the text of Trans-Spec's second amended complaint and the ESC appended thereto.

We pause further only to emphasize that, even if Trans-Spec had not waived its argument on appeal, it was well within the discretion of the district court to refuse to consider the "Caterpillar Limited Warranty" document, i.e. the so-called "two-year warranty." Trans-Spec's complaint refers generically to "the Caterpillar warranty," but then directs the court only to the ESC, which was attached as an exhibit. If Trans-Spec also wished to base its allegations on the "Caterpillar Limited Warranty," Trans-Spec should have also referred the court to it specifically and attached it to the complaint. Then, the magistrate judge would almost certainly have treated the additional warranty as integral

-10-

to the complaint, and she would have considered it. But Trans-Spec did not submit that document to the magistrate judge. Although Trans-Spec was aware of the "Caterpillar Limited Warranty" from the outset of the case, Trans-Spec decided to omit it from the magistrate judge's review.[3]

The district court is permitted, at its discretion, to consider materials not before the magistrate judge. 28 U.S.C. § 636(b)(1). However, that discretion must be exercised sparingly. We have previously noted that it would be "fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and - having received an unfavorable recommendation – shift gears before the district judge." Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988). Moreover, "[s]ystemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." Id. Accordingly, it was well within the district court's

---

[3]Caterpillar's counsel suggested at oral argument that Trans-Spec's efforts to base its claims solely on the ESC are a result of its desire to avoid the consequences of a negligence disclaimer contained in the "Caterpillar Limited Warranty" document. Whatever the rationale, the result is the same. The "Caterpillar Limited Warranty" document was never presented to the magistrate judge, was not considered by the district court, and is not properly before us on appeal from the grant of the motion to dismiss.

discretion to decline to consider the "Caterpillar Limited Warranty" document in deciding the motion to dismiss.

Thus, in our review of the motion to dismiss, we are limited to the text of Trans-Spec's complaint and the language in the ESC. We will not review the deposition testimony, affidavits, or additional warranty documents that were not considered by the magistrate judge and the district court.

## B. **Future Performance**

The Uniform Commercial Code ("U.C.C."), as adopted in Massachusetts, provides that an action for breach of warranty must be commenced within four years of the date when the cause of action accrues.[4] Mass. Gen. Laws ch. 106, § 2-725(1). The code section then specifies when the cause of action accrues:

> A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Id. § 2-725(2). Thus, the default rule in § 2-725(2) is that the cause of action for breach of warranty is time-barred if brought more than four years after tender of delivery. However, if the warranty explicitly extends to future performance, "the four-year clock begins to tick when the breach is discovered or should have

_____

[4]The parties agree that Massachusetts law applies to this dispute.

been discovered, or when the explicit time period expires, whichever occurs first." Barkley Clark & Christopher Smith, The Law of Product Warranties § 11:4 (2006).

Trans-Spec's complaint stated that Trans-Spec accepted delivery of the trucks containing Caterpillar's allegedly defective flywheel housing in December 1999 and January 2000. Trans-Spec filed suit for breach of warranty in August 2004. Thus, on its face, Trans-Spec's complaint is not timely unless the warranty on which its claims are based is one that "explicitly extend[s] to future performance of the goods" and the circumstances are such that the "'discovery of the breach must await'" the time of the promised future performance.[5] See Coady v. Marvin Lumber & Cedar Co., 167 F. Supp. 2d 166, 170 (D. Mass. 2001) (quoting Raytheon Co. v. Helix Tech. Corp., 1999 WL 753483, *3 (Mass. Super. 1999)).

The Supreme Judicial Court of Massachusetts has not discussed the proper application of the future performance requirement in § 2-725(2) of the U.C.C. Thus we must make "an informed prophecy of what the court would do in the same situation." Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). In making such a prophecy, we look to analogous

---

[5]Because we determine that the warranty language does not explicitly extend to the future performance of the goods, we do not reach the question of whether discovery of the defect "must await" the time of future performance.

-13-

cases decided by other courts in the forum state, persuasive reasoning in cases from other states, and learned treatises. Id.

To determine whether a warranty is one of future performance, we must look to the language of the warranty itself to determine whether it explicitly guarantees the future performance of the goods. See Coady, 167 F. Supp. 2d at 170 ("In determining whether a warranty explicitly extends to future performance, courts have emphasized the word 'explicitly' . . . ."). For example, if a warranty states that the product "would be free from defects in materials and workmanship for a period of five years," it explicitly extends to the future performance of the goods. See, e.g., Grand Island Exp. v. Timpte Indus., Inc., 28 F.3d 73, 75 (8th Cir. 1994); Std. Alliance Indus., Inc. v. Black Clawson Co., 587 F.2d 813, 820-21 (6th Cir. 1978); see also Clark & Smith, supra, § 11:4. If, on the other hand, the warranty states "we promise to repair the product if it malfunctions within the first five years," it does not explicitly guarantee the future performance of the goods. Clark & Smith, supra, § 11:4; cf. New Eng. Power Co. v. Riley Stoker Corp., 477 N.E.2d 1054, 1058-59 (Mass. App. Ct. 1985). This type of repair promise warrants the future performance of the warrantor, not the goods. Clark & Smith, supra, § 11:4. The warrantor has not guaranteed that the goods will not malfunction in the future, but rather that the warrantor will remedy any problems that arise in a particular way for a limited period of time. Id.;

-14-

see, e.g., Neb. Popcorn, Inc. v. Wing, 602 N.W.2d 18, 23 (Neb. 1999) ("A warranty to repair or replace does not guarantee proper performance. Rather, it anticipates potential defects and specifies the buyer's remedy during the stated period."); Flagg Energy Dev. Corp. v. General Motors Corp., 709 A.2d 1075, 1086 (Conn. 1998) (repair or replacement clause provides buyer only the relief expressly promised and is not a promise of future performance of the goods); Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883, 889-91 (Ala. 1989) (repair or replace language does not guarantee that goods will perform free of defects; rather it anticipates that defects will occur).

The only warranty language properly before us in considering Caterpillar's motion to dismiss is contained in the "On-Highway Vehicle Engine Extended Service Coverage" ("ESC") document, which was appended to Trans-Spec's complaint. The ESC states: "This service contract . . . provides full components and labor coverage for covered components failures due to defects in Caterpillar materials or workmanship under normal use."[6] The ESC

_____

[6]The ESC also states that "it runs concurrently with the Caterpillar On-Highway Vehicle Engine Warranty." This sentence almost certainly refers to the "Limited Warranty" document. Although Trans-Spec refers to this document as the "two-year warranty," it actually contains language that could reasonably be construed as a five-year warranty of future performance on certain parts, including the flywheel housings: "These parts are warranted against defects in material and workmanship for 60 months or 500,000 miles or 10,000 operating hours, whichever occurs first after date of delivery to the first user." Trans-Spec perhaps could have argued that this language was incorporated by reference as a

-15-

guarantees that "Caterpillar will pay 100% of the components and labor charges for covered failures, with no deductible charges" for failures occurring within the first 60 months or 500,000 miles. It specifies Caterpillar's responsibility to "restore the engine to its operating condition prior to failure by repairing/replacing only the defective components and consequential damaged components necessary to remove/repair/install the defective components."

The ESC thus never guaranteed that Caterpillar's engines would not fail; it merely warranted that Caterpillar would pay to repair them if they did fail. As such, the warranty provided in the ESC is not a warranty that explicitly extends to the future performance of the goods, and the later accrual date specified in § 2-725(2) does not apply. Thus, Trans-Spec's claims are time-barred by the four-year statute of limitations that began to run on the date of delivery of the trucks.

In reaching this conclusion, we note that some courts have interpreted a vehicle manufacturer's promise to repair or replace defective parts as capable of being breached, not at tender of delivery, but only in the event that the promised repairs are refused or unsuccessful. See, e.g., Mydlach v. DaimlerChrysler Corp., 875 N.E.2d 1047, 1059-60 (Ill. 2007) (holding that a promise

result of this sentence in the ESC referring to the "Limited Warranty" document and was, as a result, integral to the complaint. However, Trans-Spec did not make such an argument and does not even point out the cross-reference in its appellate brief. Consequently, we will not consider it.

to repair is not an "express warranty" and thus accrual for breach of a repair promise is not governed by § 2-725(2), which applies only to breach of warranty).  These courts have held that the cause of action for breach of a repair promise accrues when the promisor fails to or refuses to repair the defects.  Id.  However, this view does not prevail in Massachusetts.[7]  In New England Power, the Appeals Court of Massachusetts rejected the position that a promise to repair or replace should be viewed as an independent or separate warranty.  477 N.E.2d at 1058.  Instead, the court said that such promises "are generally viewed as specifications of a remedy" and that if the promise to repair "is not fulfilled, then the cause of action is the underlying breach of warranty."  Id.  The court describes as "a fallacy" the argument that "by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period."  Id.  Thus, the court held that the promise to repair had no effect on the statute of limitations for the breach of warranty.  See id. at 1058-59.

The ESC appears to be framed as a separate "service contract," rather than a limitation of remedy on a warranty, and could perhaps be treated as such.  However, Trans-Spec styled its

[7]Moreover, Trans-Spec argues that the repair promise contained in the ESC constitutes a "remedy of first resort" for breach of an express warranty of future performance.  Trans-Spec does not argue that the repair promise is separately enforceable.  Thus, the argument has been waived.

-17-

complaint as a claim for breach of warranty under the U.C.C., not for breach of a service contract.[8] As such, Trans-Spec's claim is subject to analysis under § 2-725(2), the U.C.C.'s statutory provision regarding the accrual of a claim for breach of warranty. Because Trans-Spec does not allege or even argue that the ESC is a separate service contract, rather than a U.C.C. express warranty, we will not treat it as such for the purposes of our analysis. Cf. Cosman v. Ford Motor Co., 674 N.E.2d 61, 68 (Ill. App. Ct. 1996) (dismissing a count framed in U.C.C. terms, but sustaining claim for breach of a promise to repair brought under the Magnuson-Moss Act because such a claim "cannot ripen until the promise is broken and has nothing to do with the inherent quality of the goods or their future performance").[9] As a result, any breach of which Trans-Spec is complaining must stem from an underlying U.C.C. warranty on the engines themselves. Trans-Spec has not identified, within the record properly before us, any underlying warranty guaranteeing the future performance of the goods themselves. The

---

[8]Service contracts, because they are not primarily concerned with the sale of goods, would fall outside the purview of the U.C.C.'s statutory scheme and would be governed by the general six-year statute of limitations and the common law contract principle that the cause of action accrues at the time the promise is breached. See Mass. Gen. Laws ch. 106, § 2-102 ("[T]his Article applies to transactions in goods . . . .").

[9]Trans-Spec's complaint also alleges breach of the Magnuson-Moss Act. See 15 U.S.C. § 2304(a). However, that federal provision only applies to consumer goods. The Caterpillar engines in Trans-Spec's trucks are not consumer goods, and the claim was therefore dismissed below.

claim for breach therefore accrued on the date of delivery of the goods and Trans-Spec's suit, which was filed more than four years after delivery of the trucks, is time-barred.

## C.  Equitable Estoppel

If Trans-Spec is to escape the consequence of its lack of diligence in bringing this action, it must do so by averring that Caterpillar lulled Trans-Spec into the delay.  See New Eng. Power, 477 N.E.2d at 1059.  Where it appears from the dates and facts recounted in the complaint that the statute of limitations has run, the plaintiff has an affirmative burden to plead in its complaint the facts required to establish estoppel.  LaChapelle, 142 F.3d at 509-10.  Under Massachusetts law, "estoppel would require proof that the defendants made representations they knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations."  White v. Peabody Const. Co., 434 N.E.2d 1015, 1023 (Mass. 1982).  "[H]onest, genuine repair efforts, standing alone," are not a "sufficient basis for application of the doctrine of estoppel."  New Eng. Power, 477 N.E.2d at 1060.  Trans-Spec's complaint does not allege any representations made by Caterpillar that induced Trans-Spec to delay filing suit, nor does the complaint allege that Caterpillar's efforts to repair the trucks

-19-

were insincere or pretextual. Instead, the complaint alleges only that they were unsuccessful.[10] See id.

Having failed to allege any facts predicate to the estoppel claim in its complaint, Trans-Spec premises its claim on the deposition transcripts and affidavits attached to its opposition to Caterpillar's motion to dismiss and its objection to the magistrate judge's report and recommendation. As we noted above, Trans-Spec waived its argument that the magistrate judge and the district judge should have considered these documents, either by deeming them integral to Trans-Spec's complaint or by converting Caterpillar's motion to dismiss into a motion for summary judgment. Thus, the documents are not properly before us and we will not consider them. As a result, Trans-Spec's estoppel argument fails.[11]

_____

[10]Indeed, Trans-Spec seems to allege that at some point between 2002 and 2004 Caterpillar refused to pay for additional repairs. This allegation seriously diminishes Trans-Spec's argument that Caterpillar made representations that lulled it into delay in filing suit. On the contrary, Caterpillar's actions appear to have put Trans-Spec on notice that Caterpillar was disputing its liability for the failures and that Trans-Spec may have to file suit in order to force Caterpillar to pay. The only representations by Caterpillar officials that are recounted in the complaint occurred in June and August 2004. By that date the four-year statute of limitations had already run. Obviously, no estoppel claim can arise from representations made by Caterpillar after the time for filing suit had already passed.

[11]To the extent that Trans-Spec's argument is premised on fraudulent concealment sufficient to warrant statutory tolling under Massachusetts General Laws chapter 260, § 12, it fails for the same reason: Trans-Spec's complaint failed to allege any fraudulent concealment by Caterpillar.

## D.  Count II – Chapter 93A Claim

Count II of Trans-Spec's complaint alleges that, by breaching its warranty obligations to Trans-Spec, Caterpillar engaged in unfair trade practices in violation of Massachusetts General Laws chapter 93A.  The accrual date of the chapter 93A claim is the same as the accrual date for the underlying action. Hanson Housing Auth. v. Dryvit Sys., Inc., 560 N.E.2d 1290, 1295 (Mass. App. Ct. 1990).  Accordingly, the four-year statute of limitations applicable to chapter 93A actions, Mass. Gen. Laws ch. 260, § 5A, had expired when Trans-Spec filed suit in August 2004.

## III.

Following the magistrate judge's recommendation that Caterpillar's motion to dismiss be granted, Trans-Spec filed a motion to amend the pleadings, which the magistrate judge denied. We review the denial of a motion to amend the pleadings under an abuse of discretion standard.  O'Connell v. Hyatt Hotels, 357 F.3d 152, 154 (1st Cir. 2004).

Trans-Spec argues that the magistrate judge erred by failing to apply the "liberal" amendment policy set forth in Federal Rule of Civil Procedure 15(a), which provides that pleadings may be amended with court approval and that "[t]he court should freely give leave when justice so requires."  See Fed. R. Civ. P. 15(a)(2).  However, as the magistrate judge correctly noted, Rule 16(b) establishes a different standard when a motion to

-21-

amend comes late in the case.  Rule 16(b) requires that the district court enter a scheduling order setting the deadlines for subsequent proceedings in the litigation, including amendment of the pleadings.  Fed. R. Civ. P. 16(b)(1), (3)(A).  One purpose of the rule is "to assure 'that at some point . . . the pleadings will be fixed.'"  O'Connell, 357 F.3d at 154 (quoting Adv. Comm. Notes to 1983 Amends. to Fed. R. Civ. P. 16(b)).  The deadlines established in the scheduling order may be extended on a showing of good cause.  Id.  Our case law clearly establishes that Rule 16(b)'s "good cause" standard, rather than Rule 15(a)'s "freely give[n]" standard, governs motions to amend filed after scheduling order deadlines.  Id. at 154-55.

Here, Trans-Spec filed its motion to amend eleven months after the deadline established by the scheduling order.  Although Trans-Spec seeks to justify its delay by pointing to information discovered at various depositions, none of that information is relevant to the estoppel theory or the future performance warranty theory that could allow Trans-Spec's claims to survive the motion to dismiss.  The allegations that Trans-Spec seeks to add to its amended complaint are based on information that Trans-Spec had or should have had from the outset of the case.[12]  The explanation for

_____

[12]On the issue of estoppel, any evidence of reliance by Trans-Spec officials on Caterpillar's representations that it would "make Trans-Spec whole" would not require discovery.  Any such evidence of reliance would be within the knowledge of Trans-Spec's own officials.  With regard to the so-called "two-year warranty,"

-22-

the delay seems to be simply that Trans-Spec thought that it would prevail on the motion to dismiss without any need to further amend. In that, its calculations were wrong. Nonetheless, Trans-Spec must be bound by the consequences of its litigation strategy. See James v. Watt, 716 F.2d 71, 77 (1st Cir. 1983) ("[T]he pleadings in this case were drawn as part of a litigating strategy and plaintiffs showed the district court no reason why they should not be bound by the consequences of that strategy."). Accordingly, Trans-Spec's motion to amend was properly denied.[13]

## IV.

Next, we turn to Trans-Spec's challenge to the district court's grant of Caterpillar's summary judgment motion with regard to Count III, Trans-Spec's negligence claim. We review a grant of summary judgment de novo. Palmieri v. Nynex Long Distance Co., 437 F.3d 111, 113 (1st Cir. 2006). "In conducting such review, we examine the summary judgment record in the light most friendly to the summary judgment loser, and we indulge all reasonable

---

Trans-Spec does not explain when it discovered the existence of this warranty. As this warranty formed part of the basis for the bargain for the sale of the trucks, Trans-Spec was or should have been aware of its existence prior to the filing of its initial complaint.

[13]Trans-Spec's motion to amend its complaint also contained a motion to alter or amend the court's order dismissing Trans-Spec's breach of warranty claims "to correct clear legal error and to prevent manifest injustice." As we have explained above, we find no legal error in the district court's granting of Caterpillar's motion to dismiss. As a result, the district court did not err in denying Trans-Spec's motion to alter or amend the order.

-23-

inferences in that party's favor."  Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  We affirm the grant of summary judgment if we conclude that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);  Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).  The moving party has the initial burden of demonstrating the absence of an issue of material fact necessitating a trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If the moving party successfully carries this burden, the party opposing the motion must present affirmative evidence "sufficient to deflect brevis disposition."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  In meeting these burdens, "[n]either party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact."  Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997).

At the summary judgment stage, our review is no longer limited to the parties' pleadings.  Thus, although the "Caterpillar Limited Warranty" (the so-called "two-year warranty") was not part of the record for the purposes of the motion to dismiss, it was properly before the magistrate judge when she considered Caterpillar's subsequent motion for summary judgment on the

-24-

remaining claims, and it is properly part of the record we now review. The "Caterpillar Limited Warranty," which both parties agree was part of the contract governing Trans-Spec's acquisition of truck engines from Caterpillar, contained the following language in bold-faced, capital letters:

> **CATERPILLAR EXCLUDES ALL LIABILITY FOR OR ARISING FROM ANY NEGLIGENCE ON ITS PART OR ON THE PART OF ANY OF ITS EMPLOYEES, AGENTS, OR REPRESENTATIVES IN RESPECT OF THE MANUFACTURE OR SUPPLY OF GOODS OR THE PROVISION OF SERVICES RELATING TO THE GOODS.**

Caterpillar argues that this language effectively bars Trans-Spec's claim of negligence against Caterpillar for the design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution of the truck engines. We agree.

It is well established that "under the law of Massachusetts in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." Sharon v. City of Newton, 769 N.E.2d 738, 744 (Mass. 2002) (internal quotation marks and ellipses omitted). Exculpatory clauses[14] permit parties to make "sensible business judgments" allocating risk. Minassian v. Ogden Suffolk Downs, Inc., 509 N.E.2d 1190, 1192 (Mass. 1987). As a

---

[14]An "exculpatory clause" is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act." Black's Law Dictionary 608 (8th ed. 2004).

result, Massachusetts courts typically enforce such clauses according to their terms, particularly in a business context. Id.; see also Deerskin Trading Post, Inc. v. Spencer Press, Inc., 495 N.E.2d 303, 307 (Mass. 1986) ("Limiting damages . . . where the two parties are sophisticated business entities, and where consequential damages . . . could be extensive, is a reasonable business practice . . . .").

Exculpatory clauses are rendered void if they are unconscionable. See Mass. Gen. Laws ch. 106, § 2-302(1) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). Under Massachusetts law, "unconscionability must be determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1376 (Mass. 1980) (citation omitted). The inquiry into unfair surprise is "focused on the circumstances under which the agreement was entered into." Id. The question of oppression is, in turn, "directed to the substantive fairness to the parties of permitting the

-26-

[exculpatory] provisions to operate as written." Id. at 1377. Thus, this two-part inquiry "involves a search for components of 'procedural' and 'substantive' unconscionability." Id. at 1377 n.13.

The clause excluding liability for negligence in this case does not have the components of either procedural or substantive unconscionability. Neither opaquely worded nor hidden in small print, the exculpatory clause would not support a finding of unfair surprise. Moreover, both Caterpillar and Trans-Spec are sophisticated commercial parties who negotiated the contract for the sale of the truck engines at arm's length.

Trans-Spec argues that the clause is unconscionable because Caterpillar "affirmatively misrepresented the capabilities and reliability of its [engines] and failed to disclose its negligent design and manufacture," depriving Trans-Spec of any meaningful choice in negotiating the contract. In support of its contention that Caterpillar "affirmatively misrepresented" the engines, Trans-Spec cites the deposition testimony of a non-party witness who reported that Caterpillar "bragg[ed] that engine up like there was no tomorrow." This testimony recounts classic seller's talk, which is not actionable as a misrepresentation. Moran v. Levin, 64 N.E.2d 360, 362 (Mass. 1945). Trans-Spec also cites a Caterpillar-owned patent for an improved flywheel housing, U.S. Patent No. 6,065,757 (filed July 2, 1998), as evidence that

Caterpillar failed to disclose the "negligent design and manufacture" of the engines sold to Trans-Spec, which included an earlier flywheel housing design. However, as the district court aptly explained, "Caterpillar's effort to improve on a piece of equipment can not be viewed as evidence that unimproved equipment was negligently designed or manufactured." See Fed. R. Evid. 407. Accordingly, Trans-Spec's contention that the exculpatory clause is unconscionable as a result of either misrepresentation or concealment of negligent design fails because it is unsupported by evidence in the record.

Next, Trans-Spec argues that enforcing the exculpatory clause to foreclose a negligence claim would be unconscionable because it would leave Trans-Spec without "a fair quantum of remedy." Mass. Gen. Laws ch. 106, § 2-719 cmt. 1. We disagree. If Trans-Spec finds itself without an adequate remedy here, it is because, as we describe above, Trans-Spec did not assert its contract remedies in a timely fashion. Trans-Spec may not be rewarded for this delay through the revival of tort remedies that were explicitly excluded by agreement.

Trans-Spec also argues that because the warranty remedies failed of their essential purpose, the negligence exclusion clause is invalid. In support of this argument, Trans-Spec cites Massachusetts General Laws chapter 106, § 2-719(2), which provides that "[w]here circumstances cause an exclusive or limited remedy to

fail of its essential purpose, remedy may be had as provided in this chapter." Even assuming that the warranty remedies failed of their essential purpose in this case, the cited language does not result in the invalidity of the negligence disclaimer. The chapter referred to by the language of § 2-719(2) contains the Uniform Commercial Code, which sets forth contractual remedies, see, e.g., Mass. Gen. Laws ch. 160, § 2-715 (defining incidental and consequential damages for breach of contract), not tort remedies. Accordingly, even if the warranty remedies did fail of their essential purpose, the effect of this failure would be to revive other contractual remedies, if they had not been time-barred.[15] Such a revival would have no effect on the exclusion of tort liability by means of a negligence disclaimer. See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp., 617 F.2d 936, 941 (2nd Cir. 1980) (holding that U.C.C. § 2-719(2) could not be used to "construct a remedy in tort" where the plaintiff's cause of action for breach of warranty was barred by the statute of limitations).

Trans-Spec further argues that the ESC contains no exclusion of liability for negligence and thus Trans-Spec may be held liable for its failure to perform repairs in a workmanlike manner. Although Trans-Spec's complaint alleges a litany of

---

[15]The four-year statute of limitations in § 2-725(1) applies to all claims brought under the U.C.C., not just to warranty claims. As such, all of Trans-Spec's potential contractual claims are time-barred.

negligent conduct by Caterpillar ("negligent design, development, assembly, manufacture, inspection, testing, marketing, advertising, and distribution"), the complaint does not allege negligent <u>repair</u>. Accordingly, we see no need to consider this argument further.[16]

Finally, Trans-Spec asserts that the negligence exclusion clause was orally waived by Caterpillar. As record evidence of this waiver, Trans-Spec cites testimony that Caterpillar's agents and employees promised to "make [Trans-Spec] whole." Under Massachusetts law, to prove waiver of a contractual provision, a party must cite "clear, decisive and unequivocal conduct . . . indicating that [the other party] would not insist on adherence" to that provision. <u>See</u> <u>D. Federico Co., Inc.</u> v. <u>Commonwealth</u>, 415 N.E.2d 855, 858 (Mass. App. Ct. 1981) (quoting <u>Glynn</u> v. <u>City of Gloucester</u>, 401 N.E.2d 886, 892 (Mass. App. Ct. 1980)). The vague promise made by Caterpillar does not implicate any specific contractual provision either directly or indirectly. As a result, it falls short of the standard necessary to establish waiver.

In short, Trans-Spec makes no compelling argument and cites no specific facts that would invalidate the negligence

---

[16]Similarly, Trans-Spec argues that it has a viable claim for negligent misrepresentation and that the "district court should have inferred Trans-Spec's negligent misrepresentation claim from its negligence claim and denied Caterpillar's Motion for Summary Judgment." Trans-Spec had ample opportunity to amend its pleadings; indeed, the negligence claim itself was not in Trans-Spec's original complaint. Thus, we fail to understand why the district court would be <u>required</u> to infer a claim that Trans-Spec failed to assert in its pleadings.

exclusion clause.  Thus, we conclude that the district court correctly granted Caterpillar's motion for summary judgment as to Count III of Trans-Spec's complaint.

<u>Affirmed</u>.